342 So.2d 897 (1977)
Olius McCrory
v.
STATE of Mississippi.
No. 49390.
Supreme Court of Mississippi, En Banc
March 2, 1977.
Ronald N. Ashley, Robert L. Houston, Jackson, for appellant.
A.F. Summer, Atty. Gen. by Ben H. Waliey and Karen A. Gilfoy, Asst. Attys. Gen., Jackson, for appellee.
*898 WALKER, Justice, for the Court:
The petition for rehearing filed on behalf of the State of Mississippi is granted and the opinion reversing the conviction of Olius McCrory (handed down November 2, 1976) is hereby withdrawn and the following opinion is substituted therefor.
Olius McCrory was cited for contempt of court and fined the sum of $50 by the Circuit Court of Hinds County, Mississippi. McCrory had refused to comply with an order of that court directing him to provide exemplars of his handwriting to the Hinds County Grand Jury. In his appeal to this Court he contends that the Grand Jury had no authority to make an independent investigation of his case, and, even if it did, his right not to provide handwriting exemplars is guaranteed by the self-incrimination clause of the State Constitution. Mississippi Constitution Article 3, Section 26 (1890). McCrory raises no federal claim before this Court.
The facts are not in dispute. McCrory was arrested on March 4, 1975, by the Jackson Police, who suspected him of forgery *899 and utterance of a check. On advice of counsel, he refused to provide handwriting exemplars to the police. On March 14, 1975, McCrory appeared before the Hinds County Grand Jury, pursuant to a subpoena. The Grand Jury directed him to produce an exemplar of his handwriting and McCrory refused. The District Attorney sought and received an order from the Circuit Court of Hinds County directing McCrory to provide the exemplars. When McCrory again refused, he was cited for contempt and fined.
There is no merit to McCrory's contention that the Grand Jury lacked the authority to investigate his case upon presentation by the District Attorney. It is the duty of the Grand Jury to make such an investigation, for the protection of the accused as well as the general public. This Court has noted that it is the duty of the Grand Jury, when presented with an indictment, to examine "the evidence in support of it to determine if sufficient to secure the conviction of the accused." In Re Davis, 257 So.2d 884, 886 (Miss. 1972). To facilitate this investigatory function, the Legislature has provided that witnesses may be subpoenaed to appear before the Grand Jury. Miss. Code Ann. § 99-9-23 (1972). It is nonsense to suppose that the Legislature intended that witnesses might be summoned but not interrogated. We conclude that the Grand Jury had the authority to interrogate McCrory.
There remains the constitutional question of whether McCrory had the right to refuse to supply the handwriting exemplar. He bases his refusal on section 26 of the Mississippi Constitution, which provides that the accused "shall not be compelled to give evidence against himself." This language differs from the Fifth Amendment to the United States Constitution, which provides that no person "shall be compelled in any Criminal Case to be a witness against himself." Because of this distinction, McCrory argues that the Mississippi Constitution provides a broader protection against self-incrimination than does the Federal Constitution.
This distinction is crucial to McCrory's case, since the United States Supreme Court has clearly held that neither the Fourth Amendment nor the Fifth Amendment precludes a state court from ordering the production of handwriting exemplars. The Court has reasoned that the Fifth Amendment only bars the compelled production of testimonial evidence, as opposed to identifying physical characteristics. The Court in Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967), held squarely that a handwriting exemplar was an identifying characteristic, and thus outside the protection of the Fifth Amendment:
The taking of the exemplars did not violate petitioner's Fifth Amendment privilege against self-incrimination. The privilege reaches only compulsion of "an accused's communications, whatever form they might take, and the compulsion of responses which are also communications, for example, compliance with a subpoena to produce one's papers," and not "compulsion which makes a suspect or accused the source of `real or physical evidence'... ." Schmerber v. California, 384 U.S. 757, 763-764, 86 S.Ct. 1826, 16 L.Ed.2d 908. One's voice and handwriting are, of course, means of communication. It by no means follows, however, that every compulsion of an accused to use his voice or write compels a communication within the cover of the privilege. A mere handwriting exemplar, in contrast to the content of what is written, like the voice or body itself, is an identifying physical characteristic outside its protection. United States v. Wade, supra, 388 U.S. 218 at 222-223, 87 S.Ct. 1926, 18 L.Ed.2d 1149. No claim is made that the content of the exemplars was testimonial or communicative matter. Cf. Boyd v. United States, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746. (Id. at 266-67, 87 S.Ct. at 1953, 18 L.Ed.2d at 1182-83.)
Furthermore, in United States v. Mara, 410 U.S. 19, 93 S.Ct. 774, 35 L.Ed.2d 99 (1973), the Court held that a Grand Jury witness could be cited for contempt for refusal to *900 supply handwriting exemplars to the Grand Jury.
The United States Supreme Court has found that a suspect may also be subjected to several other procedures, consistently with the Fifth Amendment. A suspect may be required to submit to a blood test. Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). In United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), the Court held that a suspect could be required to appear at a lineup, to wear clothes worn by the criminal, and to utter words spoken by the criminal for purposes of identification. See also Holt v. United States, 218 U.S. 245, 31 S.Ct. 2, 54 L.Ed. 1021 (1910). It is likewise clear that the Fifth Amendment does not protect a suspect from being fingerprinted against his will. See Davis v. Mississippi, 394 U.S. 721, 730, 89 S.Ct. 1394, 1399, 22 L.Ed.2d 676, 683 (1969) (Stewart, J., dissenting); Wade, supra, 388 ULSL at 223, 87 S.Ct. at 1930, 18 L.Ed.2d at 1155; Schmerber, supra, 384 U.S. at 764, 86 S.Ct. at 1832, 16 L.Ed.2d at 916. Most recently, the Court has held that a suspect may be required to provide a voice exemplar for comparison with tape recordings in evidence. United States v. Dionisio, 410 U.S. 1, 93 S.Ct. 764, 35 L.Ed.2d 67 (1973).
This Court has found these opinions persuasive in its interpretation of the Mississippi Constitution. In Smith v. State, 229 So.2d 551 (Miss. 1970), we held that police could require a suspect to be fingerprinted and to exhibit himself for purposes of identification. We earlier noted that a suspect could be required to repeat the words uttered by a criminal and to put on articles of clothing for purposes of identification. Fondren v. State, 253 Miss. 241, 175 So.2d 628 (1965). The Legislature has set up statutory regulations for the testing of breath, blood and urine under certain circumstances. Miss. Code Ann. §§ 63-11-5  63-11-7 (1972). This Court has not heretofore had occasion to rule on whether these tests might violate section 26 of the Mississippi constitution, although we have held that whatever Fourth Amendment rights the tests might transgress may be waived by consent. Cutchens v. State, 310 So.2d 273 (Miss. 1975).
We must determine, then, whether the follow Gilbert and Mara in holding that a suspect's privilege against self-incrimination is not violated by the compelled production of handwriting exemplars. From the pattern of cases recited above, we do not suggest that the Mississippi Constitution must always be interpreted identically to the United States Constitution. It is a basic principle of our Federal Republic that a sovereign state may place greater restrictions on the exercise of its own power than does the Federal Constitution. See Oregon v. Hass, 420 U.S. 714, 719, 95 S.Ct. 1215, 1219, 43 L.Ed.2d 570, 575-76 (1975).
However, we believe it wise to begin with the presumption that similar sections of the United States Constitution and the Mississippi Constitution ought to be construed similarly. As a general rule, the imposition of two different standards would introduce unnecessary confusion among lawyers, judges, and law enforcement officers throughout the state. See Howard, State Courts and Constitutional Rights in the Day of the Burger Court, 62 Va.L.Rev. 873, 898 (1976). We must determine whether there is anything in the history or language of our Constitution which overcomes this initial presumption.
It is true that section 26 states the accused "shall not be compelled to give evidence against himself." McCrory argues that while the compelled production of handwriting exemplars does not require the accused "to be a witness against himself" in the words of the Fifth Amendment to the United States Constitution, those exemplars do constitute giving "evidence against himself" as forbidden by our section 26. We perceive no such fine distinction between giving evidence against oneself and being a witness against oneself, nor do we suppose that the framers of our Constitution intended any such distinction. This language in the Constitution of 1890 appears exactly as it did in section 10 of the Constitution of 1817, drafted by the convention which secured *901 Mississippi's entry into the United States. That language was retained in section 10 of the Constitution of 1832, and was reaffirmed by the Conventions of 1861 and 1865. The language appeared as section 7 of the Constitution of 1868. An examination of the Journals of each of those State Conventions gives no indication that the framers intended this language to have any special significance beyond that already guaranteed in the Federal Constitution. Indeed, a standard historical work indicates that those who originally drafted the language in 1817 intended no particular innovation:
Except for a few minor exceptions, the Mississippi Constitution of 1817 was hardly innovative. Most of its provisions were borrowed from the Constitutions of Tennessee, Kentucky, and Louisiana. The editor of the Worchester Spy succinctly summarized Mississippi's Constitution when he wrote that "it is... so similar to the constitutions of many of the other states that its perusal does not excite much interest." (Haynes, The Road to Statehood, in 1 R.A. McLemore, A History of Mississippi 217, 250 (1973).
Our examination gives us no reason to conclude that, in this case, section 26 of the Mississippi Constitution provides any broader protection than does the Fifth Amendment to the United States Constitution. We therefore hold that McCrory was required to comply with the lawful order of the court directing him to produce handwriting exemplars, and was properly found in contempt for his failure to do so.
The District Attorney stipulated that he intended to introduce this evidence at McCrory's trial, if McCrory was indicted. We find this stipulation irrelevant to our decision. We are not called upon to decide whether or not the handwriting exemplars might be introduced at McCrory's trial, and we make no suggestion as to our resolution of that question. We decide only that the Grand Jury had a right and a duty to investigate McCrory's alleged crime, and that McCrory had no right to refuse to provide the handwriting exemplars as ordered by the court.
Therefore, McCrory's citation for contempt as well as the imposition of his fine must be affirmed.
AFFIRMED.
GILLESPIE, C.J., and SMITH, ROBERTSON, SUGG and LEE, JJ., concur.
PATTERSON and INZER, P. JJ., and BROOM, J., specially concur.
PATTERSON, Presiding Justice, specially concurring:
I concur in the opinion because I understand it considers only the issue of whether McCrory was properly fined for refusing to provide exemplars to the grand jury. In doing so I do not wish to be understood as passing upon or adjudicating the greater question of McCrory's immunity from prosecution if the coercion of the contempt citation persuades him to give such evidence before the grand jury.
INZER, P.J., and BROOM, J., join in this opinion.