540 So.2d 1319 (1989)
Larry Anthony WHITEHURST
v.
STATE of Mississippi.
No. 58277.
Supreme Court of Mississippi.
March 1, 1989.
*1320 Anthony L. Farese, C. Collier Carlton, Jr., Farese, Farese & Farese, Ashland, for appellant.
Mike Moore, Atty. Gen. by DeWitt Allred, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before ROY NOBLE LEE, C.J., and PRATHER and SULLIVAN, JJ.
SULLIVAN, Justice, for the Court:
Larry Anthony Whitehurst was convicted by jury in the Circuit Court of Tate County of culpably negligent manslaughter pursuant to Miss. Code Ann., § 97-3-47 (1972). Whitehurst was sentenced by the court to serve a term of twelve (12) years in the custody of the Mississippi Department of *1321 Corrections. Whitehurst has appealed to this Court assigning the following as error:
1. The trial court committed reversible error in denying Appellant's Motion in Limine and then therefore allowing the results of a blood test administered to defendant while he was unconscious to be admitted into evidence;
2. The trial court committed reversible error in allowing into evidence irrelevant evidence, to-wit: test results of a blood test performed on blood removed from the body of Ronald Wallace, deceased;
3. The trial court committed reversible error in refusing to permit recross-examination of State witness Smiley;
4. The trial court committed reversible error in failing to grant Whitehurst's proposed Jury Instruction D-9, a lesser included offense Instruction;
5. The trial court erred in failing to grant Whitehurst's proposed Instruction D-10;
6. The trial court erred in failing to direct a verdict of acquittal made at the conclusion of the State's case; and
7. The trial court erred in failing to sustain Whitehurst's Motion for JNOV/New Trial.
Whitehurst was involved in an automobile wreck on the night of March 29, 1986, on State Highway # 305 in Tate County, Mississippi, which resulted in the death of Ronald B. Wallace, and in serious injury to Whitehurst. Whitehurst was traveling south on Highway # 305, and Wallace was traveling north. The accident was a headon collision in the northbound lane.
It appears that on the morning of March 29, 1986, (around 10:00 a.m.) Whitehurst went to the house of Kevin Stull, and they drove to Coldwater and Independence, Mississippi, around noon that day. The two then proceeded to Byhalia, Mississippi, for a day at the races, and on the way they purchased and consumed a 12 pack of beer. After staying at the races a few hours, visiting with friends, Whitehurst and Stull returned to Stull's house. On the way they purchased another 12 pack of beer, but Stull testified that they "never even got into it," and that it remained in a cooler in the trunk of the car.
Back at Stull's house, Stull's wife announced that their baby girl was sick and needed medical attention. Thereupon, Stull and his wife proceeded to the hospital, and Whitehurst began his fateful journey home, some time around 6:30 to 7:00 p.m., southbound on State Highway # 305.
John Hurt was traveling south on Highway # 305 that same evening. He apparently was ahead of Whitehurst because he met Mr. Wallace going north, and seconds afterward, he heard but did not see the collision behind him. Hurt testified that the Wallace vehicle appeared to be traveling within the 55 mile per hour speed limit, and was not being erratically driven.
Walter Durdin was also traveling on Highway # 305 that night, in the northbound lane. Durdin was an eyewitness to the crash. The events he described revealed a car following about 200 feet behind him (the Wallace car) traveling north at approximately 50 to 55 miles per hour, and two cars were approaching from the south. As the first southbound car passed Durdin (at approximately 55 miles per hour), the second southbound car (Whitehurst) closed quickly on the first car. Just as the Whitehurst car passed Durdin, it moved quickly into the left, or northbound lane, in an attempt to pass the first southbound car. Durdin estimated the Whitehurst vehicle's passing speed at approximately 70 miles per hour, and before the Whitehurst vehicle could overtake its target, it collided headon with the Wallace vehicle which had been following approximately 200 feet behind Durdin in the northbound lane of Highway # 305.
Whitehurst's vehicle came to rest about 30 to 33 feet south of the point of impact, which was the northbound lane, and Wallace's car came to rest about 37 to 40 feet from the point of impact. There were no skid marks, but there were gouge marks in the pavement indicating the point of impact. Further, this section of Highway # 305 where the accident occurred was flat, and on the night in question, the road surface *1322 was dry and there was nothing to impede visibility.
Officer Jeff McNeese of the Mississippi Highway Safety Patrol was the first officer to arrive on the scene, and he observed six beer cans in the passenger compartment of the Whitehurst vehicle, and three more in the trunk. Of the six, three had been opened and emptied, and three others were closed, but had been punctured. As stated earlier, it was Stull's testimony that there was a full twelve pack in the trunk that had been untouched. McNeese testified that he detected the presence of alcohol on Whitehurst, but he also stated that the odor of beer could have been attributable to the punctured cans. Wallace was pronounced dead at the scene, and Whitehurst was semi-conscious at best.
Based on these observations, Officer McNeese directed a blood sample to be taken from Whitehurst at the hospital in order to determine his blood alcohol content. McNeese also requested a blood sample from the deceased as a matter of department policy. Before a blood sample is taken, an implied consent form is usually read to the person to be tested informing him of his rights and the consequences of a refusal to be tested, but that was not done in this case because Whitehurst was not conscious enough to comprehend his rights.
At trial, the results of both tests were admitted into evidence. The tests on Whitehurst showed that his blood alcohol content was .20 percent, .10 percent being the legal limit under the implied consent law.
In Whitehurst's behalf, several people who saw him earlier in the day at the Byhalia race track testified that he appeared normal. In their opinion, Larry Whitehurst was not drunk when he left the races with Stull that afternoon, some time around 6:00 p.m. Whitehurst testified in his own behalf that he had six beers to drink all day, and was not drunk when he left Stull's house that night. Further, he only remembered driving down the road listening to his radio, hearing a pop, and waking up four days later in a Memphis Hospital.

I.

DID THE TRIAL COURT ERR IN OVERRULING WHITEHURST'S MOTION IN LIMINE AND ADMITTING INTO EVIDENCE THE RESULTS OF THE BLOOD ALCOHOL CONTENT TEST PERFORMED ON THE DEFENDANT?
It is undisputed that Whitehurst did not consent to either the taking or use of the blood alcohol content test. The test was taken pursuant to Mississippi Code Annotated, § 63-11-7 (1972). That section authorizes the taking of a blood test to determine the blood alcohol content of a person who is "unconscious or dead as a result of an accident, ... or is otherwise in a condition rendering him incapable of refusal ... if the arresting officer has reasonable grounds to believe the person to have been driving a motor vehicle upon the public highways, public roads and streets of this state while under the influence of intoxicating liquor."
That section also provides that "[t]he results of such test or tests, however, shall not be used in evidence against such person in any court ... without the consent of the person so tested, or, if deceased, such person's legal representative." Whitehurst filed a Motion in Limine to exclude the test results on the basis of the exclusionary privilege provided by Section 63-11-7. After argument outside the jury's presence, the trial judge overruled the defendant's motion. Whitehurst appeals that ruling, and relies exclusively on the language in Section 63-11-7.
The State argues in support of the trial judge, who held that the evidentiary exclusion contained in Section 63-11-7 is inconsistent with the Mississippi Rules of Evidence, and is therefore, repealed pursuant to M.R.E. 1103. See also, M.R.E. 501.
Whitehurst concedes that the sole issue here is whether the results were, by statute, inadmissible. He raises no issue of whether there was probable cause to have sought the blood alcohol test, or whether a procurement of the blood sample offended any of his constitutional guarantees. It *1323 does not appear from the record whether Whitehurst was under arrest at the time of the blood testing, or whether a formal arrest followed contemporaneously, but the absence or presence of a formal arrest is of insufficient moment because even a prearrest, warrantless blood test is constitutionally permissible. See Whitley v. State, 511 So.2d 929 (Miss. 1987); Gibson v. State, 503 So.2d 230 (Miss. 1987); Cole v. State, 493 So.2d 1333 (Miss. 1986); Williams v. State, 434 So.2d 1340 (Miss. 1983); Ashley v. State, 423 So.2d 1311 (Miss. 1982); McCrory v. State, 342 So.2d 897 (Miss. 1977); Cupp v. Murphy, 412 U.S. 291, 93 S.Ct. 2000, 36 L.Ed.2d 900 (1973); Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966); Breithaupt v. Abram, 352 U.S. 432, 77 S.Ct. 408, 1 L.Ed.2d 448 (1957).
The sole question is whether the prohibition in Section 63-11-7 governs the admissibility of the test results, notwithstanding that the search and seizure of the blood sample did not violate any of the constitutional guarantees accorded Whitehurst. While previous cases from this Court have admitted the results of a blood alcohol test performed on a defendant, those cases did not involve an application of the exclusion in Section 63-11-7 because the blood test in those cases was not taken from an unconscious or functionally unconscious person pursuant to Section 63-11-7. See, e.g., Whitley v. State, supra; Gibson v. State, supra; Cutchens v. State, 310 So.2d 273, 276 (Miss. 1975). Therefore, this is the first case to squarely confront the application of the privilege created by Section 63-11-7.
Under the Mississippi Rules of Evidence, it is clear that the test results are admissible. Under Rule 401, the blood alcohol content of the defendant goes to the state of the defendant's intoxication, and this is relevant and probative on the issue of whether the defendant is guilty of criminally culpable negligence. Gibson, 503 So.2d at 233. Of course, being intoxicated does not create a prima facie case of culpably negligent manslaughter, but being under the influence is certainly a factor if it can be further established that the intoxication proximately contributed both to the establishment of negligence and to the resulting death. Gibson, supra; Stever v. State, 503 So.2d 227, 229 (Miss. 1987); Dickerson v. State, 441 So.2d 536, 539 (Miss. 1983). Thus, unless excluded by Rule 403, the evidence was relevant and admissible.
As for Rule 403, the jury was properly instructed that proof of intoxication alone does not constitute manslaughter by culpable negligence. Thus, it seems that the probative value of this evidence is not outweighed by any danger of unfair prejudice, confusion or misleading of the jury. Therefore, the test result showing Whitehurst's blood alcohol content to be .20 percent is relevant and admissible evidence under the Mississippi Rules of Evidence. Furthermore, as established and admitted, the evidence is not excludable on constitutional grounds.
Consequently, we are left to ask whether the results of the blood alcohol content test performed on Whitehurst are nonetheless inadmissible per Mississippi Code Annotated, § 63-11-7 (1972), even though the admission of such evidence is permissible under both the constitution and the Mississippi Rules of Evidence. For two reasons, we conclude that the statutory exclusion in Section 63-11-7, upon which Whitehurst relies, must yield to the Mississippi Rules of Evidence.
M.R.E. 1103 states that "[a]ll evidentiary rules, whether provided by statute, court decision, or court rule, which are inconsistent with the Mississippi Rules of Evidence are hereby repealed." As just demonstrated, the exclusion in Section 63-11-7 is inconsistent with the Mississippi Rules of Evidence since it attempts to prohibit the use of evidence against Whitehurst which would otherwise be admissible under the evidence rules.
Secondly, Section 63-11-43 provides that the results of a chemical test given under the provisions of the implied consent law are not admissible in a civil case. Read in conjunction with Section 63-11-7, there is created a "privilege" shielding blood alcohol test results from admission in evidence in civil cases, absent consent. Bryant v. *1324 Alpha Entertainment Corp., 508 So.2d 1094, 1098 (Miss. 1987). However, by virtue of M.R.E. 501, effective January 1, 1986, this privilege has been abrogated. Hughes v. Tupelo Oil Co., 510 So.2d 502, 505 (Miss. 1987) Comment. See also, Hall v. State, 539 So.2d 1338 (Miss. 1989).
M.R.E. 501 states that, except as otherwise provided by the U.S. Constitution, State Constitution, by these rules, or by other applicable rules, no person has a privilege to prevent another person from disclosing any matter. The exclusion in Section 63-11-7 is no less a "privilege" in the criminal context than the "privilege" created in civil cases by operation of 63-11-7 and -43. In either case, there is created a privilege on the part of a person in Whitehurst's situation to prevent, by withholding his consent thereto, the introduction into evidence of the results of a blood alcohol test taken pursuant to provisions of the implied consent law. Furthermore, the Mississippi Rules of Evidence, including the rules relating to privileges, apply equally in civil and criminal cases. Therefore, the "privilege" created by Section 63-11-7, standing alone, is effectively abrogated by Rule 501 the same as the civil privilege created by Section 63-11-7 and -43 has been so abrogated. This is not inconsistent with the explanatory comment to Rule 501 which states that "all such statutory privileges are abrogated," and refers to the civil case privilege found in 63-11-7 and -43 only as "an example."[1]
In sum, the privilege created by Section 63-11-7 is not provided for by the Rules of Evidence, and its operation is totally inconsistent with the Rules of Evidence. Therefore, that part of Section 63-11-7 purporting to create a privilege in favor of Whitehurst to prevent disclosure of the blood alcohol test results without his consent must yield to our Rules of Evidence. M.R.E. 501, 1103, and Hall v. State, supra. Consequently, the trial court did not err by admitting into evidence the results of the blood alcohol test performed on Whitehurst.

II.

DID THE TRIAL COURT ERR BY ADMITTING INTO EVIDENCE THE RESULTS OF A BLOOD ALCOHOL CONTENT TEST PERFORMED ON A DECEASED, RONALD WALLACE?
Whitehurst made a motion outside of the presence of the jury to prohibit introduction into evidence of the results of a blood alcohol test performed on Ronald Wallace. The trial judge reserved ruling, and when the test results were sought to be introduced at trial, Whitehurst objected on the grounds of relevancy, and the trial judge overruled the objection without stating his reason. Whitehurst's argument on appeal is two-prong. We quickly dispose of the argument that admission of the test results was improper because Officer McNeese had no reasonable grounds or probable cause pursuant to Section 63-11-7 to request the tests. Whitehurst simply has no standing to object on Wallace's behalf. Robinson v. State, 219 So.2d 916, 919 (Miss. 1969).
Secondly, and ironically, Whitehurst does not argue that the evidence was excludable per Section 63-11-7 because there was no consent by Wallace's legal representative, but instead argues that the evidence was irrelevant, and therefore inadmissible, per Mississippi Rules of Evidence. Assuming, without deciding, that this evidence was irrelevant, and therefore, inadmissible pursuant to Mississippi Rules of Evidence 402, it is clear that error, if any, by the trial judge in admitting this evidence did not affect a substantial right of Whitehurst. M.R.E. 103(a). The fact that Wallace was sober is a neutral fact not likely to excite the jurors in any way prejudicial to Whitehurst. Consequently, any error in admitting this evidence was harmless beyond doubt.

III.

DID THE TRIAL COURT ERR IN REFUSING TO PERMIT RECROSS-EXAMINATION *1325 OF STATE WITNESS SMILEY?
On direct examination of J.C. Smiley, a forensic scientist with the Mississippi Crime Laboratory, it was revealed that the blood sample of Larry Whitehurst was received at the crime lab on April 2, 1986, at approximately 11:55 a.m. Smiley performed a test on the sample, which in his words showed that "the blood labeled Larry Whitehurst contained .22 percent ethyl alcohol  excuse me  .20 ethyl alcohol."
On cross-examination, it was confirmed that the Whitehurst sample arrived at the crime lab on April 2, 1986, at approximately 11:55 a.m. It was also revealed that J.C. Smiley saw the sample for the first time on October 27, 1986, and that Smiley had no knowledge of the sample prior to that date. The remainder of cross-examination was used, albeit unsuccessfully, to attack the reliability of the blood alcohol content test performed by Smiley. Defense counsel sought repeatedly to establish what effect, if any, the presence of other substances in the blood or in the system of an individual would have on the accuracy of the test. He also sought to establish what effect outside factors such as the quality of the analyst or the passage of time since consumption of alcohol would have on the accuracy of the test.
Picking up on defense counsel's reference to the fact that Smiley did not test the blood until October 27, 1986, the State elicited on re-direct examination that Anna L. Ezelle had initially tested the sample on April 3, 1986. The defense objected to this line of inquiry and was overruled. The State's attorney then asked Smiley whether the results of Ezelle's tests on April 3, 1986, were consistent with the results of his own test, to which he replied, "they were very consistent with the results that I found."
It also developed on re-direct that the reason for Smiley's late entry into the picture was because Ezelle was rendered unavailable for trial due to a previous appointment in Atlanta, Georgia. Thus, Smiley was called in to re-test the sample and appear in court to testify. It was further established that there were no circumstances occurring between the receipt of the sample and Smiley's appearance in court which would have compromised the validity of the test results. The reading of .20 percent of alcohol was therefore accurate.
At this point, defense counsel asked for permission to conduct a limited re-cross examination of Smiley. His argument was that the State exceeded the scope of cross-examination on re-direct examination by asking Smiley about the previous test run by Ezelle. Furthermore, defense counsel sought to challenge Smiley's statement that his results were "consistent" with Ezelle's since, as a matter of fact, Ezelle's tests showed Whitehurst's blood alcohol content to be .22 percent ethyl alcohol, a fact learned by defense counsel in pretrial discovery. Defense counsel viewed the difference between .20 and .22 percent as significant; to use defense counsel's metaphor, that would be "the difference of running 60 miles per hour and 54 miles per hour."
As the State pointed out, they did not get into the specific numbers on re-direct examination, but only sought to correct what they perceived to be the impression made on cross-examination that Smiley's test results were suspect because they were conducted some months after Ezelle's tests. Furthermore, defense counsel objected to Smiley's testifying to the specific results of Ezelle's tests, but did not thereafter object when the question was re-phrased to ask only whether the two test results were consistent.
The trial judge denied defense counsel's request for re-cross examination because there was no objection to the question as re-phrased, and because defense counsel had this information by way of discovery, and presumably, could have elicited this fact on cross-examination if it felt that the discrepancy was favorable to the defense.
Hubbard v. State, 437 So.2d 430, 434 (Miss. 1983), sets out rather clearly that "re-cross examination is not allowable as a matter of right, but a matter of trial court discretion." The defendant's argument that his valuable right of cross-examination *1326 was bridled, based on Edge v. State, 393 So.2d 1337 (Miss. 1981), and Miskelley v. State, 480 So.2d 1104 (Miss. 1985), avails him none. Edge dealt with surrebuttal testimony, and Miskelley dealt with cross examination. Thus, these cases are factually distinguishable.
Hubbard is authority for the proposition that it is proper to deny re-cross examination "where there is no claim of oversight and no reason stated why the matter was not inquired into on" cross examination. 437 So.2d at 434. Defense counsel admitted knowledge of the two test results as early as pretrial discovery. There was ample opportunity to develop this point on cross examination of Smiley, and no reason has been put forth to excuse this failure. Consequently, the trial judge did not abuse his discretion by denying Whitehurst a limited right to recross examination. See also, 98 C.J.S. Witnesses § 429 (1957).
Furthermore, even assuming error, we fail to see the prejudice. Smiley's test results were .02% more favorable to Whitehurst. To use the defendant's speed limit metaphor, it would be more proper to say that the difference between .20% and .22% is equivalent to the difference between driving 110 miles per hour and 121 miles per hour in a 55 mile per hour speed zone.[2] In either case, Whitehurst is so far in excess of the legal limit that the jury's failure to be fully apprised of this negligible difference could have no prejudicial effect.

IV.

DID THE TRIAL COURT ERR IN REFUSING INSTRUCTION D-9?

V.

DID THE TRIAL COURT ERR IN REFUSING INSTRUCTION D-10?
Defense Instruction D-9 would have instructed the jury that if the state failed to prove a case of culpable negligence manslaughter under Miss. Code Ann., § 97-3-47 (1972), it could acquit Whitehurst and proceed to consider whether he was guilty of the lesser crime of negligent manslaughter by operation of a vehicle under the influence of intoxicating liquor per Miss. Code Ann., § 63-11-30(4) (Supp. 1988). Instruction D-10 then sets forth the elements of the lesser offense. The maximum punishment under § 63-11-30(4) is five years.
Whitehurst argues that these companion instructions should have been granted because the crime in § 63-11-30(4) is a lesser included offense of culpable negligence manslaughter, and the instructions were warranted by the evidence. The state counters that § 63-11-30(4) represents a lesser offense only, not a lesser included offense, and that pursuant to § 99-19-5, the jury may only convict the defendant of an inferior offense "the commission of which is necessarily included in the offense with which he is charged in the indictment." See also, Wilcher v. State, 455 So.2d 727 (Miss. 1984).
This Court stated recently, under similar facts, that the defendant "could have been prosecuted under either statute," and further, that "negligently causing the death of another person while under the influence of intoxicating liquor" pursuant to § 63-11-30(4) is a "lesser included offense" of culpable negligence manslaughter under § 97-3-47. Craig v. State, 520 So.2d 487, 491-92 (Miss. 1988). Looking at "the facts of [the] case," the Court found § 63-11-30(4) manslaughter to be a lesser included offense of the culpable negligence manslaughter with which Craig was charged. Id. at 493. Incidentally, the State in Craig was given two instructions authorizing a conviction under either statute. Id. at 490.
Similarly, in Childs v. State, 521 So.2d 882 (Miss. 1988), following Craig, supra, we stated, under similar facts, that manslaughter under § 63-11-30(4) is a "lesser included offense" of the culpable negligence manslaughter with which Childs was charged. 521 So.2d at 883.
*1327 Applying Craig and Childs presently, it seems clear that manslaughter under § 63-11-30(4) is "a lesser included offense necessarily encompassed in the facts of this case under the more serious charge of manslaughter by culpable negligence." Craig, 520 So.2d at 493. Whitehurst, under the facts of this case, could not be convicted of culpable negligence manslaughter without having also committed the lesser included offense of negligent manslaughter under § 63-11-30(4). The commission by Whitehurst of the lesser offense is a necessary and essential element of his guilt for the greater offense.
Notwithstanding, and assuming an evidentiary basis, instructions D-9 and D-10 would be required as a matter of right since they regard an offense carrying a lesser punishment which arises out of a nucleus of operative fact common with the factual scenario giving rise to the charge laid in the indictment. Gangl v. State, 539 So.2d 132 (Miss. 1989); Griffin v. State, 533 So.2d 444, 447-48 (Miss. 1988).
We turn to Harper v. State, 478 So.2d 1017 (Miss. 1985), to determine whether an evidentiary basis existed. There it is stated that:
a lesser included offense instruction should be granted unless the trial judge  and ultimately this Court  can say, taking the evidence in the light most favorable to the accused, and considering all reasonable inferences which may be drawn in favor of the accused ... that no reasonable jury could find the defendant guilty of the lesser included offense (and conversely not guilty of at least one essential element of the principal charge).
478 So.2d at 1021.
A review of the facts demonstrates the unquestionable evidentiary propriety of granting Instructions D-9 and D-10. This view is especially compelling in light of Craig, supra, and Childs, supra, where under analogous facts, this Court reduced the respective convictions from culpable negligence manslaughter to the lesser manslaughter under § 63-11-30(4). Any reasonable jury certainly could have found Whitehurst guilty only of the lesser charge under the evidence and inferences, and, therefore, the trial court erred in refusing those instructions. However, the question of whether the error is reversible should appropriately await resolution of the remaining assignments.

VI.

DID THE TRIAL COURT ERR IN FAILING TO GRANT DEFENDANT'S MOTION FOR DIRECTED VERDICT OF ACQUITTAL AT CLOSE OF STATE'S CASE IN CHIEF?
After moving for a directed verdict at the close of the State's case in chief, Whitehurst proceeded to put on his own defense. Therefore, he waived this error. "To do otherwise requires the heart of a gambler and nerves of steel, yet to go forward with the evidence waives this assignment of error." Stever v. State, 503 So.2d 227, 230 (Miss. 1987).

VII.

DID THE TRIAL COURT ERR IN DENYING DEFENDANT'S MOTION FOR J.N.O.V./NEW TRIAL?

A.

Sufficiency
Whitehurst's motion for j.n.o.v. tests the legal sufficiency of all of the evidence to support a verdict of culpable negligence manslaughter. On appeal, this Court is required to:
accept as true all evidence favorable to the state, together with all reasonable inferences arising therefrom, to disregard the evidence favorable to the defendant, and if such evidence would support a verdict of guilty beyond reasonable doubt, the trial court's denial of the motion must be affirmed.
Stever, 503 So.2d at 230.
In order to obtain a conviction under § 97-3-47 for vehicular manslaughter, "it must be proved beyond a reasonable doubt that the defendant was guilty of culpable negligence." Id. at 229. This requires proof that Whitehurst "was guilty of such *1328 gross negligence ... as to evince on his part a wanton or reckless disregard for the safety of human life, or such an indifference to the consequences of his act under the surrounding circumstances as to render his conduct tantamount to wilfulness ..." Id., quoting Dickerson v. State, 441 So.2d 536 (Miss. 1983), and Smith v. State, 197 Miss. 802, 20 So.2d 701 (1945).
More to the point, "while driving ... under the influence of intoxicating liquor is a crime in and of itself ... this in itself does not constitute culpable negligence, nor does it make what would otherwise be no more than a negligent act in operating a motor vehicle culpable negligence under the meaning of the statute." Craig v. State, 520 So.2d at 492. It may, however, "be considered as an element constituting gross and careless disregard for the value of human life," and further, it may be a factor indicating criminally culpable negligence if the influence of intoxicants proximately contributed both to the negligence of the defendant and to the resulting death. Gibson v. State, 503 So.2d at 233.
In Gandy v. State, 373 So.2d 1042 (Miss. 1979), this Court upheld a culpable negligence manslaughter conviction where the evidence showed that the defendant was intoxicated, and was sufficient to show a causal connection between his being intoxicated and driving on the wrong side of the road in a straight stretch of highway, and subsequently colliding head-on with a vehicle going in the opposite direction. In Gibson, supra, this Court upheld a culpable negligence manslaughter conviction where evidence showed that the defendant was intoxicated over the legal limit and drove off of a straight stretch of highway into the rear of the decedent's vehicle, which had its taillights burning. In Atkinson v. State, 392 So.2d 205 (Miss. 1980), this Court upheld a conviction on evidence showing that an intoxicated driver, in attempting to pass another vehicle on a two-lane highway, collided head-on with an oncoming vehicle. Apparently though, the Court found it significant that the defendant in Atkinson had a few seconds lapse within which to avoid the accident by moving back into his proper lane.
Conversely, this Court reduced a conviction of culpable negligence manslaughter to manslaughter under § 63-11-30(4) in Craig v. State, supra, on evidence showing that the defendant was intoxicated and negligently attempted to turn into his driveway, without seeing an approaching motorcycle, which he struck, thereby causing the death of the cyclist. In Childs v. State, supra, this Court followed Craig on evidence showing that the defendant, while intoxicated, ran a stop sign and was struck by and oncoming tractor-trailer truck, thereby killing one of the passengers in the defendant's car. In Stever v. State, supra, this Court reversed and rendered on evidence showing that the defendant, while intoxicated, and on a curvy, poorly marked road, collided head-on with an oncoming vehicle. However, there were no eyewitnesses in Stever, and the Court in Stever noted that their resolution may well have differed had there been eyewitness testimony or other evidence of recklessness on Stever's part. 503 So.2d at 230, note 1. Also, the Court in Craig seemed to attach significance to the fact that there were no eyewitnesses to Craig's driving just prior to impact. 520 So.2d at 492.
In this case, there was eyewitness testimony that Whitehurst approached the lead, southbound vehicle at a high rate of speed; that immediately after passing by the eyewitnesses' northbound vehicle, Whitehurst proceeded directly into the left lane in an attempt to pass the southbound vehicle; and, that the decedent's vehicle followed approximately 200 feet behind the eyewitnesses' vehicle and was, or clearly should have been, plainly visible to Whitehurst. Further, Whitehurst was driving under the influence of intoxicating liquor and the accident occurred on a straight, flat stretch of highway. The uncontradicted evidence was that the decedent was driving normally within his lane, and there was no evidence to indicate that conditions were such as to cause Whitehurst to lose control of his vehicle.
The evidence, along with all reasonable inferences, was sufficient to support the jury's verdict. While it may be said, as it *1329 was in Craig, supra, that the defendant had "a purpose" in entering the left lane, and that the only negligence was in his timing, such a possibility is an issue which the jury was entitled to resolve against Whitehurst. See, Craig, 520 So.2d at 492. Furthermore, the evidence, or at least a reasonable inference, showed that Whitehurst either had or certainly should have had "an opportunity to avoid the collision after the danger could clearly be observed." Contra Craig, supra (emphasis in original); Atkinson, supra. In other words, the evidence and inferences justify a conclusion that the defendant's negligence was culpable due to his having wilfully created an unreasonable risk of fatal consequence to others. See, Campbell v. State, 285 So.2d 891, 893 (Miss. 1973).
Therefore, there was no error in refusing to grant Whitehurst's Motion for J.N.O.V.

B.

Weight
Motions challenging the weight of the evidence are addressed to the sound discretion of the trial judge, and this Court will not reverse the trial judge's disposition unless that discretion has been abused. Williams v. State, 522 So.2d 201, 210 (Miss. 1988). Unless the overwhelming weight of the evidence contradicts the jury's verdict, the verdict must stand. Weeks v. State, 493 So.2d 1280, 1283 (Miss. 1986).
In addressing challenges to the weight of the evidence, we must "accept as true all the evidence which supports the State's position, together with all inferences reasonably flowing therefrom, in the light most favorable to the State's theory of the case." Haymond v. State, 478 So.2d 297, 300 (Miss. 1985).
The only evidence remotely opposed to the verdict was testimony that Whitehurst did not appear drunk when he left the Byhalia racetrack around 6:00 p.m., and his own testimony that he remembered hearing a "pop" just prior to impact. This "pop", he contends, could have come from a blow out or broken tie rod which in turn contributed to the accident. Although the investigator did not check for this specific possibility, he did testify that there were no skid or gouge marks in the highway which would be consistent with such an occurrence. Whitehurst failed to explain such an absence.
In sum, all of the evidence properly went to the jurors and they "concluded that the defendant's version ... was not plausible or acceptable to them." Jones v. State, 442 So.2d 919, 921 (Miss. 1983). The overwhelming weight of the evidence does not contradict the jury verdict, and therefore, it was not error to deny Whitehurst's Motion for New Trial.
In light of the above, we are led to conclude that the court committed reversible error in refusing Instructions D-9 and D-10. None of the other assigned errors have merit, but Whitehurst's conviction of culpable negligence manslaughter must be reversed and remanded for a new trial before a properly instructed jury.
REVERSED AND REMANDED.
ROY NOBLE LEE, C.J., and PRATHER, ROBERTSON and ANDERSON, JJ., concur.
HAWKINS and DAN M. LEE, P.JJ., concur in part and dissent in part.
PITTMAN and BLASS, JJ., not participating.
HAWKINS, Presiding Justice, concurring in part and dissenting in part:
I concur in reversal.
I do not concur in the majority's treatment of Miss. Code Ann. § 63-11-7.
DAN M. LEE, P.J., joins this opinion.
NOTES
[1] The physician-patient privilege would not apply because the test was not performed pursuant to a professional relationship for purposes of diagnosis or treatment. See M.R.E. 503.
[2] .10% is the legal limit under the implied consent law, and 55 miles per hour is its speed limit equivalent. 20% is twice the legal limit, and .22% is 2.2 times the legal limit. Translated into m.p.h. we yield 2 X 55 = 110, and 2.2 X 55 = 121.