# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 98-KA-00610-SCT

*ANTHONY HODGES*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 01/29/1998 |
| TRIAL JUDGE: | HON. C. E. MORGAN III |
| COURT FROM WHICH APPEALED: | WEBSTER COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | RICHARD BURDINE |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: JEAN SMITH VAUGHAN |
| DISTRICT ATTORNEY: | DOUG EVANS |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 07/01/1999 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 7/22/99 |

**BEFORE SULLIVAN, P.J., McRAE AND MILLS, JJ.**

**SULLIVAN, PRESIDING JUSTICE, FOR THE COURT:**

## STATEMENT OF THE CASE

¶1. Anthony Hodges was indicted in the Circuit Court of Webster County on a charge of rape as a habitual offender in violation of then applicable Miss. Code Ann. §§ 97-3-65(2) (1994) & 99-19-81 (1994). A jury found Hodges guilty of rape on January 28, 1998.

¶2. In a bifurcated sentencing hearing, Hodges waived his right to a jury determination of sentence pursuant to Rule 10.04 of the Uniform Circuit and County Court Rules, and the court remanded the enhancement section of the indictment to the court file pursuant to the agreement of the State and Hodges. Circuit Judge C. E. Morgan, III subsequently sentenced Hodges to serve a term of thirty years in the custody of the Mississippi Department of Corrections and to pay all court costs, fees and assessments.

¶3. Thereafter, Hodges filed a motion for judgment notwithstanding the verdict, or in the alternative a new trial, and for bail pending appeal. Hodges's motion was denied by order of the court on March 12, 1998.

Aggrieved by the denial of the motion, Hodges perfected a timely appeal to this Court. Hodges now seeks relief in the form of a reversal of his conviction and a remand for a new trial.[1]

## STATEMENT OF THE FACTS

¶4. At trial the State offered the testimony of seven witnesses, including the testimony of the alleged victim Marie Patterson. The Defense offered the testimony of three witnesses, including the defendant Hodges.

¶5. Officer Greg Hunter, Assistant Chief of Police for the City of Eupora, testified that at approximately 11:00 p.m. on August 15, 1997, while on routine patrol in the Westwood Park area, he was approached by Camara Morton who informed him that Marie Patterson had been raped by Anthony Hodges a few minutes earlier in a nearby apartment. Hunter testified that Camara had her arm around Marie who appeared to be very upset. After advising Marie to seek medical attention, Hunter questioned Hodges but was unable to get a statement from him. According to Hunter, Hodges appeared to have been drinking.

¶6. Camara Morton testified that about 10:00 p.m. on August 15, 1997, she and her cousin Marie were in the kitchen of apartment number four. Camara testified the apartment was leased to her cousin Crystal Patterson, Marie's sister. Camara testified Marie's other sister, Lashanta Patterson, stopped by the apartment with Anthony Hodges. Camara recalled Hodges showed the three women a pistol, a chrome .25, and he played with it for about five to ten minutes.

¶7. Camara further testified Lashanta left the apartment but Hodges remained. Camara recalled Marie was looking at a Fingerhut catalogue. According to Camara, Marie told Hodges she wanted him to order a pair of shoes for her, and she would pay him back when the shoes arrived. Camara could not recall if Hodges agreed. Camara also recalled that Marie was going to a party at the National Guard Armory, and she asked Hodges if she could have three dollars (the price of admission to the party). Camara further recalled Hodges saying he did not have any change or something to that effect. Camara did not see Anthony give Marie any money.

¶8. Camara claimed that Hodges took Marie into the bedroom and closed the door behind them. According to Camara, the two remained in the bedroom for about five minutes until Lashanta returned with some french fries for Marie. Camara recalled Lashanta knocked on the bedroom door, and Hodges shouted to Lashanta "It isn't in yet." Camara stated Marie and Hodges came out of the bedroom, Lashanta gave Marie her french fries, and Lashanta left again.

¶9. According to Camara, Hodges then placed both of his hands on Marie's shoulders and walked her back into the bedroom, again closing the door behind them. Camara did not recall Marie saying anything to him. Camara estimated that Marie and Hodges remained in the bedroom twenty-five to thirty minutes this time. Camara testified that, upon hearing Marie crying and calling for her, she opened the bedroom room door to find Hodges lying on top of Marie and the two of them engaged in sexual intercourse. Camara observed Marie was crying and Hodges "just looked at her and continued."

¶10. Shocked by what she saw, Camara testified she went into the kitchen to get a knife, but remembering that Anthony had a gun, left instead to get Lashanta. Camara estimated she was gone about ten minutes. Camara stated that when she returned to the apartment with Lashanta, Hodges was sitting on the couch. According to Camara, Hodges asked her if she was mad at him, and he told her to ask Marie how much money it would take to keep her quiet. Camara said she and Lashanta found Marie crying in the bathroom,

and the three women stayed there about five or ten minutes before going across the street to Lashanta's apartment. Camara noted that by this time Hodges had left the apartment.

¶11. Camara testified that after the women discussed what had happened, Marie decided she wanted Hodges's wife to know what he had done so the three women walked to Hodges's apartment, and Lashanta told his wife about the rape. Camara testified that Hodges was present when Lashanta spoke with his wife. According to Camara, Hodges's wife asked him "Did you sleep with her? Did you rape her?" and he answered "Yes. " Camara observed Marie's demeanor was quiet and "shocked," and Marie did not say much to anyone.

¶12. On cross examination, Camara testified that when she entered the bedroom, Marie had her pants off, Hodges had his pants pulled down below his knees, and they were lying on top of the clothes. Camara did not observe Marie pushing Hodges off, but she observed Marie crying. Camara noted Hodges's hands were on Marie's sides, but she could not tell if he was holding her. Camara did not recall seeing a gun or a knife. Camara reiterated that she had seen Hodges with a gun earlier that night, and she recalled his putting the gun in his left pocket after showing it off in the kitchen.

¶13. On redirect, Camara explained she would not have heard Marie's cries earlier because she was in the kitchen cooking and the kitchen was located two rooms away from the bedroom. Camara also stated that when she first entered the bedroom she had not known what was going on. Camara testified she could not see exactly where Hodges hands were, but she observed Marie's hands were on her chest.

¶14. Marie Patterson also testified as to the events of August 15, 1997. Marie testified she had known Hodges for about a month and a half. Marie explained that she and Camara had told Hodges to order some shoes from the Fingerhut catalogue and they would pay him back when the shoes arrived. Marie recalled seeing the gun Hodges had when they were all sitting in the kitchen. According to Marie, Hodges was waiving the gun in the air and playing with it for three or four minutes.

¶15. Marie explained that Lashanta came into the bedroom the first time she and Hodges went in there. According to Marie, Hodges was trying to get on top of her, and she was trying to push him off with her leg and her knee. Marie said that Hodges stopped when Lashanta looked at him. Marie stated she returned to the kitchen to get the french fries Lashanta brought her. Marie claims Hodges followed her into the kitchen.

¶16. Marie stated that after Lashanta left and Camara a/k/a Shay returned to cooking, she went into the bedroom for the second time and Hodges followed her. Marie testified that Hodges pushed her on the bed and began taking off her clothes with one hand and holding her down with the other. Marie further testified that once he had her pinned down she began to call for Shay but Shay only replied, "What darling?" According to Marie, Hodges kept telling her to be quiet, but she would not so he pulled out his gun and held it against the right side of her head. Marie said she was calling for Shay the entire time Hodges was having sex with her.

¶17. Marie testified that when Shay finally opened the door, she simply looked in the room and left without saying anything. Marie stated that Hodges got up after Shay left and told Marie to take a shower but she did not. Marie claims Hodges said he would pay her anything if she would keep quiet about the incident. Marie testified that she was scared, particularly of the gun. Marie stated that, after Hodges dressed and left the room, Camara came into the bathroom and stayed with her for about ten minutes. Marie recalled going with Lashanta to tell Hodges's wife what had happened. Marie claims Hodges admitted having had sex with

her. Marie stated she felt ashamed and mad though because Hodges denied raping her.

¶18. Marie recalled telling a police officer that she had been raped. She also recalled going to the hospital and being examined by a doctor.

¶19. Marie clarified that she had gone into the bedroom twice that night with Hodges but only had sex with him the second time. Marie stated that she was seventeen years old when the rape occurred. She testified she did not consent to having sex with Hodges and she had told him to leave her alone. Marie identified Hodges as the man who raped her.

¶20. On cross examination, Marie stated that she asked Hodges to lend her three dollars to go to the dance at the armory, but he said he did not have it. Marie also said she had asked him to order some shoes for her, but she had promised to pay for them when they arrived. Marie testified she had never asked him for anything before and she simply had no one else to ask. Marie reiterated Hodges had said he would pay her to keep quiet about what had happened.

¶21. Marie also clarified that the first time she was in the bedroom with Hodges her clothes were not pulled down. She admitted she did not tell Camara that Hodges had tried to rape her after the first encounter in the bedroom. Marie further explained the reason she left the kitchen was to go to the bathroom to fix her hair and she had to go through the bedroom to get to the bathroom.

¶22. According to Marie, Hodges held her down with one of his arms the first time the two of them were in the bedroom. The second time they were in the bedroom, Marie claims Hodges held her right arm down except when he reached into his pocket. Marie explained that Hodges did not hold her hand down the whole time he was having intercourse with her because he had a gun in one hand. Marie recalled first seeing the gun in the kitchen. Marie testified Hodges did not put the gun to her head to make her remove her clothes, rather he removed her clothes himself. Marie stated Hodges pulled his pants off while still holding one of her arms. Marie also testified that she was pushing his arms to make him get up even while they were engaged in the sexual act. Marie repeated she did not consent to having sex with Hodges.

¶23. The chain of custody concerning the rape kit was established through the testimony of Officer Donald Card of the Eupora Police Department. Card testified that he received the evidence from Denna Jones, a nurse at Webster General Hospital who assisted Dr. James Booth in the collection of evidence. Jones testified that she was present during the examination of Marie. Dana Johnson, a forensic scientist at the Mississippi Crime Laboratory in Jackson, who was accepted as an expert in the field of serology, testified she processed the rape kit and identified seminal fluid on the vaginal slide, the rectal swab and the rectal slide.

¶24. Lashanta Patterson also testified. According to Lashanta, when she arrived with french fries for Marie, Hodges and Marie were in the bedroom with the door shut. Upon entering the room, Lashanta observed Marie lying on the bed with her legs up and Hodges trying to lie on top of her. Lashanta claims Hodges got up when he saw her and said, "You know I wouldn't do nothing to that girl. You know I wouldn't do nothing like that." Lashanta stated she only stayed at the apartment for about five minutes before returning home, but she returned to the apartment about fifteen minutes later with Camara because Camara told her Hodges had raped Marie. Lashanta testified that when she returned to the apartment, Hodges was standing at the bathroom door but he said nothing to her.

¶25. Lashanta described her sister as crying, shaking and not talking much. Lashanta testified that when they went to talk to Hodges's wife, Marie was too upset to talk so she told Hodges's wife about the rape. According to Lashanta, Hodges was at the apartment but in another room during her conversation with his wife. Lashanta claims she heard Hodges's wife ask her husband, whom she called "Thing," if he had raped that girl and he said yes. Lashanta also testified she later asked Hodges if Marie had told him "no," and he admitted she had. Lashanta claims Hodges said he did not know why he did not stop. Lashanta also testified she could smell alcohol on Hodges's breath and Hodges told her he would not blame his acts on drinking.

¶26. The State having rested and Hodges's motion for a directed verdict having been denied, the defense put on Officer Hunter as an adverse witness. Hunter testified he had searched Hodges at the time of his arrest and found some type of cutting device in his pocket. Hunter stated he did not go back to Camara's apartment to look for a gun, but he did look in the area where he had located Hodges and he also searched Hodges's vehicle after obtaining written permission to do so. The officer stated he did not go to Hodges's home.

¶27. The defense also called Camara Morton as an adverse witness. Camara testified she had been present when Hodges's wife confronted him and he admitted raping Marie.

¶28. Testifying on his own behalf, Hodges stated that he had known Marie, Camara and Lashanta for about nine or ten months. According to Hodges, when he went to Camara's apartment on the night in question, it was Marie who invited him inside. Hodges claimed he and Marie went into the bedroom because Marie offered him sex for money and he agreed. Hodges testified that Marie asked him to order some shoes for her, but she did not promise to pay him for them. Hodges also testified that Marie asked him for money to go to a party. Hodges claimed he explained to Marie he did not have any money with him but he promised to get her some money. Hodges said he and Marie then went in the bedroom to have sex. Hodges claimed he and Marie were holding hands when they entered the bedroom.

¶29. Hodges denied having forced Marie to have sex with him, stating she was the one who willingly took off her clothes when the they entered the bedroom. Hodges admitted that when Lashanta came to the door, he told her he did not have it in yet. Hodges claimed he and Marie entered the bedroom a second time to "finish what we had started." Hodges testified he did not remove Marie's clothes, she did. Hodges recalled Camara came into the room but did not say anything to him. Hodges claimed he left the bedroom when he had finished, but Marie remained there and cried because he told her he would not give her the three dollars.

¶30. Hodges testified that LaShanta told him Marie was claiming he had raped her. When asked by his wife if he had raped Marie, Hodges claimed he told her he did not rape Marie but he had "f----- her." Hodges claimed he did not pull a gun on Marie or force her to have sex with him, nor did she try to push him away or "holler out [sic]." Hodges also denied pulling out his cutting knife.

¶31. On cross examination, Hodges denied that he had been drinking that day or that he had told Lashanta he blamed what he did on alcohol. Hodges admitted Marie was crying when she came out of the bedroom and Camara saw her crying. He denied talking to LaShanta or Camara about the alleged rape. Hodges testified he could think of no reason for Camara to fabricate a story against him.

¶32. Although Hodges claimed he was telling the truth under oath, he was impeached with a prior

conviction for perjury in 1990. Hodges claimed that he was approximately eighteen years of age at the time of the perjury conviction and that he has changed since then. Hodges denied lying on the witness stand in the instant case. Hodges also denied telling anyone, including his wife, that he had raped Marie.

## STATEMENT OF THE LAW

WHETHER THE JURY'S VERDICT WAS AGAINST THE OVERWHELMING WEIGHT AND SUFFICIENCY OF THE EVIDENCE?

¶33. The State is required to prove every element of the offense charged beyond a reasonable doubt. *Heidel v. State*, 587 So. 2d 835, 843 (Miss. 1991). In determining whether the evidence is sufficient to support Hodges's conviction, we must accept as true all evidence favorable to the State, together with all reasonable references that may be drawn from that evidence. *Forbes v. State*, 437 So. 2d 59, 60 (Miss. 1983) (*citing Bullock v. State*, 391 So. 2d 601, 606 (Miss. 1980)). If that evidence is such that a jury could reasonably conclude that all the essential elements of the crime had been proven beyond a reasonable doubt, then it is legally sufficient. *Id.*

¶34. In his only assignment of error, Hodges complains the evidence presented at trial was insufficient to support the jury's verdict of rape. Hodges claims the following facts show beyond a reasonable doubt that Marie consented to have sex with Hodges: (1) Hodges and Marie entered the bedroom on two separate occasions; (2) Marie did not tell Camara that Hodges had tried to rape her when she came out of the bedroom the first time; (3) Marie asked Hodges for money and for shoes; (4) Hodges shouted to Lashanta when she knocked on the bedroom door, "It's not in yet"; and (5) Marie stayed in the bedroom a second time for approximately thirty minutes before Camara heard her calling out.

¶35. In response, the State asserts two arguments. First, the State claims Hodges is procedurally barred from seeking review of the legal sufficiency of the State's evidence. According to the State, Hodges has couched his alleged error in terms of "the weight and sufficiency of the evidence" when his actual claim is that the State failed to prove the elements of the crime (i.e., "the legal sufficiency of the State's evidence" which was waived when he put witnesses on the stand). More specifically, the State complains Hodges failed to properly challenge the sufficiency of the State's evidence because he did not renew his motion for a directed verdict until jury instructions were being discussed; it is unclear whether he submitted a peremptory instruction; and he did not address the legal sufficiency of the State's evidence in his motion for j.n.o.v. or in the alternative a new trial. Alternatively, the State claims it established beyond a reasonable doubt that Hodges was guilty of the rape of Marie.

¶36. A criminal defendant has several procedural vehicles available to him for challenging the sufficiency of the case for the prosecution-- the motion for directed verdict made at the end of the case for the prosecution, the request for a peremptory instruction at the end of all of the evidence or the motion for a directed verdict at that point, or finally, a motion for judgment of acquittal notwithstanding the verdict. *See Wetz v. State*, 503 So. 2d 803, 808 n.3 (Miss. 1987). Each requires that the court consider all of the evidence before it at the time the motion is considered. *Id.* When the sufficiency of the evidence is challenged on appeal, this Court reviews the circuit court's ruling on the last occasion when the sufficiency of the evidence was challenged before the trial court. *Id.*

¶37. In the case *sub judice*, Hodges moved for a directed verdict at the close of the prosecution's case in chief, and his motion was denied. Thereafter, Hodges proceeded to put on his own defense. Consequently,

Hodges is procedurally barred from seeking review of the legal sufficiency of the State's evidence at the time his motion for directed verdict was considered (i.e., at the close of the prosecution's case in chief). *Whitehurst v. State*, 540 So. 2d 1319, 1327 (Miss. 1989). However, "[b]y offering evidence of his own, the defendant in no way waive[d] the right to challenge the sufficiency or weight of the evidence in the event of an adverse jury verdict." *Wetz*, 503 So. 2d at 808 n.3.

¶38. In the case at bar, Hodges renewed his directed verdict motion at the close of all the evidence, albeit immediately prior to the jury instructions conference. Hodges also raised the issue of "the weight and sufficiency of the evidence" in his motion for j.n.o.v., or in the alternative, for a new trial. Accordingly, we find Hodges has properly placed the question of the sufficiency of the evidence before this Court, and we will consider *all* of the evidence not just that supporting the case for the prosecution.

¶39. This Court's stringent standard of appellate review for challenges to the legal sufficiency of evidence was articulated in *Garrett v. State*, 549 So.2d 1325, 1331 (Miss.1989) (quoting *McFee v. State*, 511 So.2d 130, 133-34 (Miss.1987)):

> When on appeal one convicted of a criminal offense challenges the legal sufficiency of the evidence, our authority to interfere with the jury's verdict is quite limited. We proceed by considering all of the evidence--not just that supporting the case for the prosecution--in the light most consistent with the verdict. We give the prosecution the benefit of all favorable inferences that may reasonably be drawn from the evidence. If the facts and inferences so considered point in favor of the accused with sufficient force that reasonable men could not have found beyond a reasonable doubt that he was guilty, reversal and discharge are required. On the other hand, if there is in the record substantial evidence of such quality and weight that, having in mind the beyond a reasonable doubt burden of proof standard, reasonable and fairminded jurors in the exercise of impartial judgment might have reached different conclusions, the verdict of [the defendant] is thus placed beyond our authority to disturb. . . .

¶40. While Hodges espoused a theory of consensual sex, reasonable and fair-minded jurors in the exercise of impartial judgment could have reached a different conclusion. Hodges admitted engaging in sexual intercourse with Marie on August 15, 1997. The rape test results revealed the presence of sperm in the vaginal and rectal specimens. Marie testified she tried to resist Hodges, a fact which was corroborated by the testimony of Lashanta and Camara.

¶41. It is enough to say the evidence created a factual issue with respect to whether Marie consented to have sex with Hodges. Accepting the testimony of the State's witnesses as true and considering all the evidence in the light most favorable to the prosecution's theory of the case, this Court concludes there is sufficient evidence in the record from which a reasonable and fair-minded jury could find beyond a reasonable doubt that Hodges raped Marie. "[T]he jury is the trier of fact and if their verdict is supported by the evidence, we will not disturb it." *Pace v. State*, 473 So. 2d 167, 169 (Miss. 1985).

¶42. Furthermore, in *Miller v. State*, 35 So. 690 (Miss. 1904), we affirmed the granting of a jury instruction which described the jury's role in the weighing of the witnesses' testimony as the:

> . . . sole and exclusive judges of the weight of the evidence and the credibility of the witnesses, and in determining the weight to be given to the testimony of each witness, you may take into consideration the reasonableness or the unreasonableness of the testimony of each witness; and, if you believe from

the evidence that any witness has willfully sworn falsely to any material matter in this case, then the jury may disregard the whole testimony of such a witness or witnesses, if you believe it untrue.

Hence, it was for the jury to decide what weight to give the conflicting testimonies concerning whether Marie consented to have sex with Hodges and whether Hodges admitted having raped Marie. The jury was also free to consider Hodges's prior conviction for perjury in weighing the truthfulness of his testimony.

¶43. Accordingly, we affirm the judgment of the Webster County Circuit Court and Anthony Hodges's conviction for rape and sentence of thirty years in the custody of the Mississippi Department of Corrections.

¶44. **CONVICTION OF RAPE AND SENTENCE OF THIRTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AFFIRMED. APPELLANT SHALL PAY ALL COURT COSTS, FEES AND ASSESSMENTS.**

**PRATHER, C.J., PITTMAN, P.J., BANKS, McRAE, SMITH, MILLS, WALLER AND COBB, JJ., CONCUR.**

1. Hodges also states that he seeks "an order reversing the judgment of the trial court and rendering an judgment of acquittal for Anthony Hodges." (Appellant's Br. 9).