# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2008-KA-00146-SCT

*JOHN DEEDS*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 12/17/2007 |
| TRIAL JUDGE: | HON. ROBERT P. CHAMBERLIN |
| COURT FROM WHICH APPEALED: | DESOTO COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | T. SWAYZE ALFORD |
| | HOLLIE M. MILLER |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: STEPHANIE B. WOOD |
| DISTRICT ATTORNEY: | JOHN W. CHAMPION |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 12/03/2009 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**LAMAR, JUSTICE, FOR THE COURT:**

¶1.     John Deeds was convicted in the Circuit Court of DeSoto County of driving under the influence with resulting injury. From that conviction, Deeds now appeals to this Court, asserting that the trial court erred by failing to dismiss the charges on the grounds of double jeopardy and by admitting the results of his blood alcohol test into evidence. Finding no merit in these assignments of error, we affirm.

¶2.    On the morning of November 6, 2004, an automobile collision involving three vehicles occurred on Goodman Road in Olive Branch, Mississippi. Faye Bridges was traveling westbound, alone in her GMC van. Deeds was traveling eastbound in his Pontiac Grand Prix, with passenger Jason Raggett.[1] The collision occurred in the inside westbound lane of Goodman Road, a four-lane roadway. Bridges testified that Deeds's vehicle "came across and hit me nearly head on."

¶3.    Officer Michael Gibbs of the Olive Branch Police Department was dispatched to the scene. Officer Gibbs testified that Deeds was pinned behind the steering wheel, semiconscious. Officer Gibbs further testified that he noticed "a real strong smell of intoxicating beverage" on Deeds's breath when he checked to see if Deeds was breathing. Officer Gibbs also observed a half-empty, half-gallon bottle of whiskey in the vehicle, which he testified had a "strong smell of alcohol or intoxicating beverage."

¶4.    After they were removed from their respective vehicles, Deeds and Bridges were taken to the MED[2] in Memphis, Tennessee. Officer Gibbs was instructed by his supervisor to go to the hospital and retrieve a blood sample from Deeds. When Officer Gibbs arrived at the hospital, he was informed by a nurse that Deeds was still semiconscious and could not

---

[1] A third vehicle involved in the collision was a Dodge truck, driven by Murray Duran with passenger Nancy Duran. Duran was behind Bridges, also traveling westbound, but in the outside lane. According to the expert accident reconstructionist, Duran was unable to avoid contact with the right rear of Bridges's vehicle after the initial collision between the vehicles driven by Deeds and Bridges. The expert further testified that Duran's vehicle had nothing to do with the cause of the collision.

[2] The Regional Medical Center at Memphis.

respond to verbal cues. Officer Gibbs observed as a nurse drew Deeds's blood in his presence. The nurse sealed the blood sample and handed it to Officer Gibbs. Officer Gibbs then transported the blood sample to the Olive Branch Police Department, where it was kept in a locked refrigerator. The blood was then transported by Sergeant Rod Stuard of the Olive Branch Police Department to the Mississippi Crime Laboratory for testing. J.C. Smiley, forensic toxicologist and associate director of the Mississippi Crime Laboratory, testified at trial that the blood test revealed that Deeds's blood contained .13 percent ethyl alcohol.[3]

¶5. Deeds was issued citations for (1) driving under the influence (DUI) first offense, and (2) no proof of insurance. A trial date was set for June 23, 2005, in Olive Branch Municipal Court. Upon arrest, Deeds posted bond. On the date of trial, Deeds pleaded guilty to the charge of no proof of insurance. The court dismissed the charge of DUI first offense. The municipal judge, in his order dismissing the DUI charge and accepting Deeds's guilty plea to no proof of insurance, noted the following:

> This cause came on to be heard on the charge of DUI-1st and no proof of insurance. The City was unable to proceed on the prosecution of the DUI-1st charge due to the factual circumstances of the case. The Defendant was in an accident and was air-lifted to the Med in Memphis, TN. The officers on the scene could not conduct any field sobriety tests due to the Defendant's injury and trapped in vehicle. Defendant was immediately air-lifted – unconscious. Blood was taken at Med. Defendant asserts and objects to admissibility under

---

[3] Smiley testified that the Mississippi Crime Laboratory's standard procedure is to dispose of blood samples six months after their analysis is complete, at which point the submitting authorities have an opportunity to retrieve the blood sample or request that the sample be held for a longer period of time. The Mississippi Crime Laboratory disposed of Deeds's blood sample according to this procedure.

3

Section 63-11-7 MCA. City cannot prove anything by extrinsic facts. The Defendant plead guilty to no insurance, but obtained prior to court.

¶6. On August 19, 2005, Deeds was indicted by a DeSoto County grand jury, under Mississippi Code Section 63-11-30(5) – driving under the influence causing injury. Deeds was arrested and posted bond. After a bench trial before Judge Robert P. Chamberlin in DeSoto County Circuit Court, Deeds was found guilty and sentenced to serve a term of fifteen years in the custody of the Mississippi Department of Corrections, with seven years to serve followed by eight years post-release supervision.[4]

**I. Double Jeopardy**

¶7. This Court applies a de novo standard of review to claims of double jeopardy. ***Boyd v. State***, 977 So. 2d 329, 334 (Miss. 2008) (citing ***Brown v. State***, 731 So. 2d 595, 598 (Miss. 1999)).

¶8. Deeds argues that the trial court erred in denying his motion to dismiss on the grounds of double jeopardy. Deeds asserts that jeopardy "attached" on June 23, 2005 – the original trial date – when the municipal court dismissed the charge of DUI first offense, barring the subsequent prosecution in circuit court. The State contends that the municipal court did not adjudicate the merits of the case, and thus jeopardy did not attach when the trial court dismissed the original charge.

¶9. The Double Jeopardy Clause of the Fifth Amendment provides that no person shall be "subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const.

_____

[4] Deeds waived his right to a jury trial and requested a bench trial.

amend. V. Similarly, Section 22 of the Mississippi Constitution of 1890 provides that "[n]o person's life or liberty shall be twice placed in jeopardy for the same offense; *but there must be an actual acquittal or conviction on the merits to bar another prosecution.*" Miss. Const. art. 3, § 22 (emphasis added).

¶10. The purposes underlying the protections of the Double Jeopardy Clause have been clearly articulated by our courts. The Supreme Court of the United States has held that the guarantee against double jeopardy protects against: (1) a second prosecution for the same offense after acquittal; (2) a second prosecution for the same offense after conviction; and (3) multiple punishments for the same offense. ***U.S. v. DiFrancesco***, 449 U.S. 117, 129, 101 S. Ct. 426, 66 L. Ed. 2d 328 (1980). The first step of this analysis is to define the point at which jeopardy attaches for purposes of invoking the protections of the Double Jeopardy Clause. The U.S. Supreme Court has held that the "protections afforded by the [Double Jeopardy] Clause are implicated *only when the accused has actually been placed in jeopardy. This state of jeopardy attaches when a jury is empaneled or sworn, or, in a bench trial, when the judge begins to receive evidence*." ***U.S. v. Martin Linen Supply Co.***, 430 U.S. 564, 569, 97 S. Ct. 1349, 51 L. Ed. 2d 642 (1977) (emphasis added). The United States Supreme Court has consistently adhered to the view that jeopardy does not attach until "the defendant is put to trial before the trier of the facts, whether the trier be a jury or a judge." ***U.S. v. Jorn***, 400 U.S. 470, 479, 91 S. Ct. 547, 27 L. Ed. 2d 543 (1971). Citing ***Martin Linen Supply,*** this Court has likewise pronounced that jeopardy does not attach in the case of a bench trial until the first witness is sworn. ***King v. State***, 527 So. 2d 641, 643 (Miss. 1988).

5

¶11.    With the teachings of *Jorn, Martin,* and *King* in mind, we find that jeopardy had not

attached when the municipal court dismissed Deeds's DUI charge in the Olive Branch

Municipal Court.  It is undisputed that the municipal judge received no evidence and heard

no witnesses before dismissing the DUI charge.  Stated otherwise, Deeds was never "put to

trial before the trier of facts" before the charge was dismissed.  The judge's comments on

the order relative to the DUI charge do not contain any findings of the court; rather, the court

merely recorded the reasons that the prosecutor gave for not proceeding to trial on the DUI

charge.[5]  We find that these notations in the order do not constitute either an aquittal or an

adjudication, such that the subsequent indictment or trial of Deeds would be barred by the

Double Jeopardy Clause.

¶12.    The dissent argues that the municipal court's order was a final adjudication on the

merits which would bar subsequent prosecution.  However, the authorities cited by the

dissent are clearly distinguishable from the case before us.  In *Sanabria v. U.S.*, 437 U.S. 54,

98 S. Ct. 2170, 57 L. Ed. 2d 43 (1978), a *mid-trial* ruling erroneously excluded certain

evidence and resulted in a subsequent entry of judgment of acquittal.  *Id.* at 57-60.  Unlike

the case sub judice, Sanabria had clearly been placed "in jeopardy" before the trial court

entered its judgment, as the judgment of acquittal was issued at the close of the defense's

case.  *Id.* at 59.  In *Smalis v. Pennsylvania*, 476 U.S. 140, 106 S. Ct. 1745, 90 L. Ed. 2d 116

(1986), at the close of the prosecution's case, the trial court dismissed the charges on the

---

[5]Contrary to the findings of the dissent, there is nothing in the record to show that the municipal judge ruled on the admissibility of the blood test results.

6

grounds that the evidence presented was legally insufficient to support a conviction. *Id.* at 141. In dismissing the charges, the trial court considered evidence that was presented during the prosecution's case-in-chief, clearly after the defendant had been placed "in jeopardy" before the trier of fact. *Id.* Conversely, in the case sub judice, there was no trial on the DUI charge and no evidence presented to the trier of fact.

¶13. In *Serfass v. U.S.*, 420 U.S. 377, 95 S. Ct. 1055, 43 L. Ed. 2d 265 (1975), the Supreme Court considered a trial court's pretrial grant of a defendant's motion to dismiss an indictment. *Id.* at 379. The Court considered and rejected the defendant's argument that the trial court's ruling was "the functional equivalent of an acquittal on the merits and constructively jeopardy had attached." *Id.* at 390. In its analysis, the Court discussed its reasons for finding that jeopardy had not attached when the trial court dismissed the indictment pretrial:

> When a criminal prosecution is terminated prior to trial, an accused is often spared much of the expense, delay, strain, and embarrassment which attend a trial. Although an accused may raise defenses or objections before trial which are 'capable of determination without the trial of the general issue,' and although he must raise certain other defenses or objections before trial, in neither case is he 'subjected to the hazards of trial and possible conviction' . . . . Both the history of the Double Jeopardy Clause and its terms demonstrate that it does not come into play until a proceeding begins before a trier 'having jurisdiction to try the question of the guilt or innocence of the accused.' Without risk of a determination of guilt, jeopardy does not attach, and neither an appeal nor further prosecution constitutes double jeopardy.

*Id.* at 391-92 (citations omitted).

¶14. It is fundamental "that an accused must suffer jeopardy before he can suffer double jeopardy." *Id.* at 393. Implicit in all of our cases reviewing claims of double jeopardy is the

7

premise that the "constitutional policies underpinning the Fifth Amendment's guarantee" are not implicated before that point in the proceedings at which "jeopardy attaches." *Jorn*, 400 U.S. at 480. That point was not reached in the Olive Branch Municipal Court. Deeds's claim of double jeopardy is without merit.

## II. Admissibility of blood alcohol test results

¶15. "This Court reviews the trial court's decision to admit or exclude evidence under an abuse of discretion standard of review." *Smith v. State*, 986 So. 2d 290, 295 (Miss. 2008). Furthermore, this Court will affirm the trial court's ruling "'[u]nless we can safely say that the trial court abused its judicial discretion in allowing or disallowing evidence so as to prejudice a party in a civil case, or the accused in a criminal case.'" *Id.* (quoting *Jones v. State*, 918 So. 2d 1220, 1223 (Miss. 2005)). The standard of review this Court employs for constitutional issues is de novo. *Thoms v. Thoms*, 928 So. 2d 852, 855 (Miss. 2006).

¶16. Deeds argues that the trial court erred in admitting into evidence the results of the blood alcohol test. Deeds claims that the results of the blood alcohol test were inadmissible because the State failed to establish the first link in the chain of custody when it failed to identify the individual who took his blood sample, failed to establish that the individual who took the blood sample was qualified to perform the procedure, and failed to establish the specific procedure utilized to take the blood sample. Deeds further claims that he was deprived of his Sixth Amendment right to confront witnesses against him by not having the nurse, who drew his blood, identified and presented to testify at trial. Finally, Deeds claims

8

that taking his blood without his consent amounted to an improper seizure in violation of his Fourth Amendment rights.

**A. Failure to comply with Section 63-11-9 of the Mississippi Code**

¶17.    Deeds claims that the State failed to preserve the chain of custody of the blood sample because it failed to identify the individual who drew his blood. Deeds asserts that because the nurse who drew his blood was not identified, he was denied the safeguard afforded by Mississippi Code Section 63-11-9,[6] which specifies that "any qualified person acting at the request of a law enforcement officer may withdraw blood" pursuant to Section 63-11-7.[7] Deeds relies exclusively on the language of the statute and  contends that because the State

---

[6]Section 63-11-9 of the Mississippi Code provides:

Under Section 63-11-7, *any qualified person* acting at the request of a law enforcement officer may withdraw blood for the purpose of determining the alcoholic content therein. . . .

Miss. Code Ann. § 63-11-9 (Rev. 2004) (emphasis added).

[7]Section 63-11-7 of the Mississippi Code provides:

If any person be unconscious or dead as a result of an accident, or unconscious at the time of arrest or apprehension or when the test is to be administered, or is otherwise in a condition rendering him incapable of refusal, such person shall be subjected to a blood test for the purpose of determining the alcoholic content of his blood . . . if the arresting officer has reasonable grounds to believe the person to have been driving a motor vehicle upon the public highways, public roads and streets of this state while under the influence of intoxicating liquor. . . .

Miss. Code Ann. § 63-11-7 (Rev. 2004).

did not prove that the individual was "qualified" to perform the procedure, the results of the blood alcohol content test were inadmissible.

¶18. Deeds's argument that the blood test results were inadmissible due to failure to comply with Section 63-11-9 is simply misplaced. Admissibility of evidence is governed by the Mississippi Rules of Evidence, not by statutory enactment. This Court has held that the Mississippi Rules of Evidence supercede statutory provisions which would render inadmissible evidence that otherwise would be admissible under the Rules of Evidence. *Whitehurst v. State*, 540 So. 2d 1319, 1323 (Miss. 1989). Since the enactment of the Mississippi Rules of Evidence on January 1, 1986, this Court has consistently held that matters regarding admission of evidence are to be decided through judicial pronouncement rather than through the legislative process. Mississippi Rule of Evidence 1103 provides that "all evidentiary rules, whether provided by statute, court decision, or court rule, which are inconsistent with the Mississippi Rules of Evidence are hereby repealed." Stated otherwise, the Legislature cannot dictate through statutory enactment what is, or is not, reliable or relevant evidence. These are judicial determinations, and at the core of the judicial function is our responsibility to establish the judicial process which tests both the relevance and the reliability of evidence. *See Hall v. State*, 539 So. 2d 1338 (Miss. 1989). Further, "[t]his Court's rule-making power is a function of our constitution's command that the three great governmental powers be separate." *Id.* at 1345.

¶19. Thus, having found that the admissibility of the blood test results is not governed by compliance with statutory requirements, we shift our analysis to whether the results of

Deeds's blood test were admissible under the Mississippi Rules of Evidence. Deeds's argument that the State failed to prove "chain of custody" is a challenge to the authenticity of the evidence. However, Deeds never substantively questioned the genuineness of the blood sample. Rather, Deeds merely suggests that because the prosecution could not provide the name of the individual who drew Deeds's blood, tampering or contamination *could* have taken place. Officer Gibbs testified that he witnessed the attending nurse draw the blood and that the nurse signed her name on the blood sample before she gave it to him. Officer Gibbs, however, did not otherwise note the nurse's name in his report, and the Mississippi Crime Laboratory disposed of the blood sample as a biological hazard six months after analysis, pursuant to standard procedures.

¶20.    Rule 901 of the Mississippi Rules of Evidence provides that "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what the proponent claims." Miss. R. Evid. 901(a). Our precedent is clear that "Mississippi law has never required a proponent of evidence to produce every handler of evidence." *Ellis v. State*, 934 So. 2d 1000, 1005 (Miss. 2006). In order for the defendant to show a break in the chain of custody, there must be an "indication or reasonable inference of probable tampering with the evidence or substitution of the evidence." *Spann v. State*, 771 So. 2d 883, 894 (Miss. 2000). The defendant has the burden of proving tampering or substitution of the evidence, and "[a] mere suggestion that substitution could possibly have occurred does not meet the burden of

11

showing probable substitution." *Ellis*, 934 So. 2d at 1005. Deeds has not attempted to prove that such tampering or substitution occurred.

¶21.	The trial judge found no indication or reasonable inference of tampering with evidence or substitution of evidence. In examining the record, we find sufficient evidence, under an abuse of discretion standard, to support the judge's finding that the blood sample was what it was claimed to be. For the reasons stated, we find this argument to be without merit.

### B. Sixth Amendment Right of Confrontation

¶22.	Deeds also claims that, because the State never identified the person who drew his blood, and because he was consequently unable to cross-examine that individual, his Sixth Amendment right to confront witnesses was violated.

¶23.	The Sixth Amendment of the U.S. Constitution provides, in part, that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI.[8]  Officer Gibbs testified that he personally observed the attending nurse draw blood from Deeds and label the sample and that he then took the sample from the nurse. Subsequently, the blood sample was delivered to the Mississippi Crime Laboratory and tested by J.C. Smiley. Both Officer Gibbs and Smiley testified at trial and were subject to cross-examination. Neither the procedure used to draw Deeds's blood, nor

---

[8] Similarly, the Mississippi Constitution of 1890 provides that "[i]n all criminal prosecutions the accused shall have a right . . . to be confronted by the witnesses against him." Miss. Const. art. 3, § 26.

12

the physical blood specimen itself, are statements, nor do they constitute nonverbal conduct intended as an assertion. Contrary to the defendant's claims, the unidentified nurse was not a witness against Deeds.

¶24. The United States Supreme Court's recent decision in *Melendez-Diaz v. Massachusetts*, 557 U.S. ____, 129 S. Ct. 2527, 174 L. Ed. 2d 314 (2009), found "certificates of analysis" of drug evidence introduced in lieu of live witnesses to be inadmissible. However, in addressing the concerns of the dissent, the *Melendez-Diaz* Court was clear that it does not require "that anyone whose testimony may be relevant in establishing the chain of custody, authenticity of the sample, or accuracy of the testing device, must appear in person or as part of the prosecution's case." 129 S. Ct. at 2532 n.1. Rather, "'gaps in the chain [of custody] normally go to the weight of the evidence rather than its admissibility.'" *Id.* (quoting *U.S. v. Lott*, 854 F.2d 244, 250 (7th Cir. 1988)). "It is up to the prosecution to decide what steps in the chain of custody are so crucial as to require evidence; but what testimony *is* introduced must (if the defendant objects) be introduced live." *Id.* (emphasis in original).

¶25. We find that the admission of the results of the blood test did not violate Deeds's Sixth Amendment right to confront witnesses testifying against him.

**C. Fourth Amendment right to be free from improper search and seizure**.

¶26. Finally, Deeds claims that taking his blood sample constituted an unlawful search and seizure in violation of his Fourth Amendment rights, alleging that Officer Gibbs had no probable cause to take his blood, nor were exigent circumstances present to necessitate taking

13

the blood sample without a warrant. Deeds was not arrested at the time of the accident but was transported to the hospital for medical treatment. Accordingly, the taking of his blood sample was not a search incident to arrest.

¶27. This Court has ruled that "[a] search made without a warrant and not incident to a lawful arrest is not illegal *per se*, but if the fruits of the search are to withstand the exclusionary rule, the search must have been predicated on probable cause." ***Hailes v. State***, 268 So. 2d 345, 346 (Miss. 1972). In ***Wilkerson v. State***, we held that drawing blood evidence from a defendant at the hospital without a warrant following an accident was not a violation of the defendant's Fourth Amendment rights because the law enforcement officer had probable cause. ***Wilkerson v. State***, 731 So. 2d 1173 (Miss. 1999). This Court held that:

> Probable cause for a search is a common sense determination that the facts and circumstances known to the police officer, either through his own direct knowledge or gained second-hand from reliable sources, are such that contraband or evidence material to a criminal investigation will be found in a particular place. It must be more than mere or reasonable suspicion, but it need not meet the requirements of proof beyond a reasonable doubt. . . .

*Id.* at 1177-78.

¶28. The facts of ***Wilkerson*** are substantially similar to those in the present case. *Id.* at 1176. The officer in ***Wilkerson*** knew that (1) the defendant had been involved in a head-on collision; (2) the collision had occurred in the other vehicle's lane of travel; (3) the defendant had been driving recklessly; and (4) the defendant had a strong odor of intoxicating substances on his person. *Id.* Similarly, Deeds's head-on collision with Bridges occurred in Bridges's lane of travel. Bridges testified that when she saw Deeds crossing into her

14

westbound lane of Goodman Road, he "[l]ooked like to me he was flying." More importantly, Officer Gibbs testified that he detected the scent of intoxicating beverage emanating from both the vehicle and from Deeds's breath when he checked to see if Deeds was breathing. Officer Gibbs also observed a half-empty, half-gallon bottle of whisky sitting on the floorboard of Deeds's vehicle. These facts and circumstances evince more than a mere or reasonable suspicion that evidence material to the criminal investigation, an illegal blood alcohol level, would be found. We find, as the trial court did, that Officer Gibbs had probable cause to obtain a blood sample from Deeds.

¶29. Further, "[a] warrantless search is permissible in certain exigent circumstances if it can be shown that grounds existed to conduct the search that, had time permitted, would have reasonably satisfied a disinterested magistrate that a warrant should properly issue." *Holloman v. State*, 820 So. 2d 52, 55 (Miss. Ct. App. 2002) (citing *Sanders v. State*, 678 So. 2d 663, 667 (Miss. 1996). In *Schmerber v. California*, 384 U.S. 757, 86 S. Ct. 1826, 16 L. Ed. 2d 908 (1966), the U.S. Supreme Court noted that search warrants are normally required for searches of homes, and held that "absent an emergency, no less could be required where intrusions into the human body are concerned." *Id.* at 770. The Court found that exigent circumstances existed to justify the warrantless seizure of blood samples:

> The officer in the present case, however, might reasonably have believed that he was confronted with an emergency, in which the delay necessary to obtain a warrant, under the circumstances, threatened 'the destruction of evidence,' *Preston v. U.S.*, 376 U.S. 364, 367, 84 S. Ct. 881, 883, 11 L. Ed. 2d 777. We are told that the percentage of alcohol in the blood begins to diminish shortly after drinking stops, as the body functions to eliminate it from the system. Particularly in a case such as this, where time had to be taken to bring the

15

accused to a hospital and to investigate the scene of the accident, there was no time to seek out a magistrate and secure a warrant. Given these special facts, we conclude that the attempt to secure evidence of blood-alcohol content in this case was an appropriate incident to petitioner's arrest.

*Schmerber*, 384 U.S. at 770-71.

¶30. During the suppression hearing, Officer Gibbs testified that exigent circumstances existed:

> Q:   Now, the question remains: Why didn't you get a warrant? How long would it have taken you to – describe to the Court what procedures you would have had to undertake at that point in time to retrieve a warrant?
>
> A:   If I did, I would have to go back to the police department, sit down, type up an affidavit at that point as well as the warrant, and then go – I would have to drive out to Judge – typically, we have our warrants signed by Judge McGarrh, who lives quite a bit out in the country so to speak, and then after I get it signed, come back and head down to the MED.
>
> Q:   Now, based off of your previous experiences, how long would that entire process have taken?
>
> A:   It's tough to say, but I mean, it could be anywhere from an hour and a half to two and a half hours.
>
> Q:   Now, based off your experience as a law enforcement officer and having been a DUI officer, as you stated earlier, what affect [sic] does time have on the level of blood alcohol in the human system?
>
> A:   As time goes on, it decreases.

¶31. Based on this testimony, and the facts and circumstances of this case, this Court is satisfied that exigent circumstances existed that justified taking a blood sample without first seeking a warrant. These circumstances include not only the undisputed fact that alcohol rates begin to dissipate after drinking ceases, but also the fact that the officers were involved in the investigation of a major vehicle accident involving serious injuries to multiple people, requiring their transportation to nearby hospitals, as well as the time that would have been

16

required to obtain a warrant before traveling to the hospital to obtain the samples. Accordingly, we find this assignment of error to be without merit.

¶32. For the reasons stated, the judgment of the Circuit Court of DeSoto County is affirmed.

¶33. **CONVICTION OF DRIVING UNDER THE INFLUENCE CAUSING INJURY AND SENTENCE OF FIFTEEN (15) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH EIGHT (8) YEARS OF POST-RELEASE SUPERVISION, AND FIVE (5) OF THOSE YEARS REPORTING TO A PROBATION OFFICER PURSUANT TO MISS. CODE ANN. § 47-7-34, WITH CONDITIONS, AND PAY A FINE OF $1000.00, AND $100.00 TO THE MISSISSIPPI CRIME VICTIM'S COMPENSATION FUND, AFFIRMED.**

**WALLER, C.J., CARLSON, P.J., DICKINSON, RANDOLPH AND PIERCE, JJ., CONCUR. KITCHENS, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY GRAVES, P.J., AND CHANDLER, J.**

**KITCHENS, JUSTICE, DISSENTING:**

¶34. I respectfully disagree with today's decision that the municipal court order dismissing the misdemeanor DUI charge did not constitute former jeopardy. The majority holds that jeopardy could not have attached because the municipal court judge did not formally receive evidence, but the focus of this analysis is misplaced. The question here is whether the municipal court's order was a final adjudication on the merits. Because the municipal court order was a final adjudication of the misdemeanor DUI charge, dismissing the charge for lack of evidence, the State was prohibited from prosecuting Deeds for another DUI charge based on the same alleged conduct.

17

¶35. "[W]hat constitutes an 'acquittal' is not to be controlled by the form of the judge's action. Rather we must determine whether the ruling of the judge, whatever its label, actually represents a resolution, correct or not, of some or all of the factual elements of the offense charged." *U.S. v. Martin Linen Supply Co.*, 430 U.S. 564, 571, 97 S. Ct. 1349, 51 L. Ed. 2d 642 (1977) (citations omitted). "[A] judgment that the evidence is legally insufficient to sustain a guilty verdict constitutes an acquittal for purposes of the Double Jeopardy Clause." *Smalis v. Pennsylvania*, 476 U.S. 140, 142, 106 S. Ct. 1745, 90 L. Ed. 2d 116 (1986) (citations omitted).

¶36. The majority finds that the municipal order dismissing the DUI charge "do[es] not contain any findings of the court; rather, the court merely records the reasons that the prosecutor gave for not proceeding to trial on the DUI charge." Maj. Op. at ¶ 11 (footnote omitted). I respectfully disagree: the clear and unambiguous language of the order, to which the prosecution and defense unequivocally agreed, indicates that the DUI charge was dismissed because the State could not produce any evidence to support the charge:

> This cause came on to be heard on the charge of DUI-1st and no proof of insurance. *The City was unable to proceed on the prosecution of the DUI-1st charge due to the factual circumstances of the case.* The Defendant was in an accident and was air-lifted to the Med in Memphis, TN. The officers on the scene could not conduct any field sobriety tests due to the Defendant's injury and trapped in vehicle. Defendant was immediately air-lifted – unconscious. Blood was taken at Med. Defendant asserts and objects to admissibility under Section 63-11-7 MCA. *City cannot prove anything by extrinsic facts.*

(Emphasis added.) The foregoing was handwritten in the body of the order of dismissal. From this language in the court's order, we know: (1) the only evidence the city had to prove

18

the DUI charge was the result of the blood alcohol test; (2) the defendant objected to the admissibility of the test result based on Mississippi Code Section 63-11-7; (3) the prosecution did not oppose this objection; and (4) when the blood test result was ruled inadmissible, the city had insufficient evidence to support a conviction for the misdemeanor DUI charge.[9] With the prosecution's in-court acknowledgment that it was unable to prove its case, the trial judge entered a final judgment of dismissal. This is abundantly clear from the plain language of the municipal court judge's order.

¶37. This judgment was entered on a standard form with blanks provided for sentencing details such as fines, court costs, fees, and jail time. The defendant was fined $100 for his conviction of the offense of no proof of insurance, but the number zero is entered in the blank provided for the fine on the DUI charge. The form also lists eight options for disposition of the charges: (1) accepts a plea of guilty to the charge(s); (2) found the Defendant guilty of the charge(s); (3) found the defendant not guilty of the charge(s); (4) accepted a recommendation of the City Prosecutor for____; (5) accepted no contest plea; (6) remanded to file; (7) other; and (8) non adjudicated. The space beside "other" is clearly marked, and next to it is a handwritten notation, "Dismiss DUI." Had the prosecution simply chosen not to proceed with its case, as the majority asserts, the order could have stated that the charge was "remanded to file" or "non adjudicated." However, "other" is marked, and the order

---

[9]The majority says that "there is nothing in the record to show that the municipal judge ruled on the admissibility of the blood test results." But, when the municipal court's order is considered as a whole, it is clear that the judge concluded that the blood test result was inadmissible.

is clear that the charge was *dismissed* for insufficient evidence. The prosecution did not *nolle prosequi* this charge. It dismissed it.

¶38. The majority says that the handwritten comments on the form were from the municipal court judge, but the defendant asserted in a hearing before the circuit court that the city prosecutor filled out the form and wrote the comments. Regardless, the trial judge signed the order and the prosecutor, the defendant and the defendant's attorney all signed the form as "approved." In other words, all parties and the judge agreed that the prosecution was unable to prove its DUI case on the day that it was set for trial. When the judge signed and filed the order, the case was over.

¶39. Of course, despite the unanimous understanding of the parties and the municipal court judge, we know that, following this Court's reasoning from two decades ago, the prosecutor and the municipal judge were mistaken. The blood alcohol test result actually would have been admissible. Although Mississippi Code Section 63-11-7 plainly provides that the result of a blood alcohol test of blood drawn from an unconscious person cannot be used as evidence against that person without his or her consent, this Court has held that such evidence is admissible. *Whitehurst v. State*, 540 So. 2d 1319 (Miss. 1989). Yet, even when a dismissal is based on an erroneous legal conclusion, the acquittal will bar subsequent prosecutions. *Sanabria v. U.S.*, 437 U.S. 54, 63-64, 98 S. Ct. 2170, 57 L. Ed. 2d 43 (1978) ("[W]hen a defendant has been acquitted at trial he may not be retried on the same offense, even if the legal rulings underlying the acquittal were erroneous.")

¶40. Despite the majority's attempts to equate the municipal court order with the dismissal of an indictment, the order is undoubtedly a final and valid judgment that the available evidence was insufficient to support a conviction, and the dismissal of the charge constitutes an acquittal for double jeopardy purposes. *Smalis*, 476 U.S. at 142. That the prosecutor agreed that the evidence was insufficient before formally presenting any evidences does not matter for double jeopardy purposes. It cannot seriously be argued that Deeds was not placed in jeopardy when he appeared before the municipal judge for trial. Deeds's DUI case was set for trial in the court in which the charge was pending. He appeared in that court, at the appointed time, with his attorney, to answer to that charge. When the case was called, the prosecutor informed the court that the city was unable to proceed because of insufficient evidence, and, along with defense counsel and the defendant, he acknowledged that he did not believe he had a viable case by signing a detailed court order to that effect. That agreed order was presented to the presiding judge, who signed it. It was duly filed with the court clerk. One can readily glean from that order that the DUI charge against Deeds was, then and there, fully and finally dismissed; Deeds was acquitted of DUI. Neither the State of Mississippi nor this Court can constitutionally resuscitate that DUI charge. Accordingly, I respectfully dissent.

**GRAVES, P.J., AND CHANDLER, J., JOIN THIS OPINION.**

21