# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2012-KA-01654-SCT

*DANIELLE HINGLE a.k.a. DANIELLE MARIE*
*HINGLE a.k.a. DANIELLA MARIE HINGLE*

*v.*

*STATE OF MISSISSIPPI*

DATE OF JUDGMENT:            09/17/2012
TRIAL JUDGE:                 HON. ROBERT P. CHAMBERLIN
COURT APPEALED FROM:         DESOTO COUNTY CIRCUIT COURT
ATTORNEYS FOR APPELLANT:     OFFICE OF STATE PUBLIC DEFENDER
                             BY: MOLLIE MARIE MCMILLIN
                                 GEORGE T. HOLMES
ATTORNEY FOR APPELLEE:       OFFICE OF THE ATTORNEY GENERAL
                             BY: SCOTT STUART
DISTRICT ATTORNEY:           JOHN W. CHAMPION
NATURE OF THE CASE:          CRIMINAL - FELONY
DISPOSITION:                 AFFIRMED - 10/09/2014
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**EN BANC.**

**COLEMAN, JUSTICE, FOR THE COURT:**

¶1.     Danielle Hingle was convicted of sale of morphine, a controlled substance, and sentenced to fifteen years in the custody of the Mississippi Department of Corrections.  On appeal, Hingle argues that admission of the testimony of a crime laboratory analyst who reviewed and signed the lab report but did not test the pills violated her Sixth Amendment right of confrontation.  She also argues that the trial court erred by admitting the pills due to flaws in the chain of custody.  We hold that the trial court did not err by allowing the reviewing analyst to testify or by allowing the pills to be admitted.

**Factual Background**

¶2. On June 21, 2011, Deputy Max Herring met confidential informant Billy Wheater for an undercover operation. After Wheater was searched, Herring, in an undercover role, drove Wheater to Hingle's workplace, a Sonic restaurant in Horn Lake. A video was played at trial showing that, when they arrived, Hingle walked up to the passenger window and Wheater handed money to Hingle. Hingle then handed pills to Wheater. Hingle counted the money and thanked Wheater; then Herring drove off. Herring testified that Wheater held the package Hingle had given him until they arrived at the post-buy location, where Wheater gave the pills to Agent Coleman.[1] Coleman placed the pills in a bag, which he initialed and sealed. Wheater was searched at the post-buy location.

¶3. Gary Fernandez, a drug analyst with the Mississippi Crime Laboratory, testified that he reviewed the results of a test conducted by Bob Reed, which had concluded that the pills contained morphine. Fernandez testified that, although he had not observed Reed performing the test, he had reviewed Reed's report line-by-line, had reached an independent conclusion that the pills contained morphine, and had signed the report as the technical and administrative reviewer. Hingle testified in her defense, and her primary defense theory was that Wheater had staged the sale to collect the confidential-informant fee. She admitted that Wheater had passed her money to "hold" for him, but she claimed that she had not given him drugs in exchange. She speculated that Wheater had produced the drugs after having concealed them from Herring by hiding them in his navel.

---

[1] Agent Coleman did not testify and his first name is not in the record.

**Analysis**

¶4.     Hingle claims that admission of Fernandez's testimony violated her Sixth Amendment right of confrontation because he only signed off on the lab report, but did not test the pills. She also argues that the trial court erred by admitting the pills into evidence because the State failed to lay a proper foundation due to flaws in the chain of custody.

> **I.  Admission of the reviewing analyst's testimony did not violate Hingle's right of confrontation.**

¶5.     Hingle argues that the lower court violated her right of confrontation because the State did not produce Bob Reed, the Mississippi Crime Laboratory analyst who actually tested the pills and determined that they contained morphine.  Reed's report was not admitted into evidence, so Hingle does not challenge the admissibility of the report through Fernandez's testimony; she takes issue with his testimony only.  Hingle failed to object to Fernandez's testimony on Confrontation Clause grounds at trial, therefore, the issue is procedurally barred.  *Conners v. State*, 92 So. 3d 676, 682 (¶ 15) (Miss. 2012).  Thus, for reversal on the issue, plain error must have existed.

¶6.     "Under the plain-error doctrine, we can recognize obvious error [that] was not properly raised by the defendant . . . and which affects a defendant's 'fundamental, substantive right.'"  *Id.* at 682 (¶ 15) (quoting *Smith v. State*, 986 So. 2d 290, 294 (¶ 10) (Miss. 2008)).  We have held "that a Confrontation Clause violation is a violation of a 'fundamental, substantive right.'"  *Conners*, 92 So. 3d at 682 (¶ 15).  Therefore, although Hingle did not object at trial, it is appropriate to determine whether a Confrontation Clause violation occurred.  For reversal under the plain error doctrine, there must have been an error

that "resulted in a manifest miscarriage of justice." *Williams v. State*, 134 So. 3d 732, 736 (¶ 15) (Miss. 2014) (citing *Gray v. State*, 549 So. 2d 1316, 1321 (Miss. 1989)). Even if there was an error of the nature alleged – and even if that error resulted in a violation of the Confrontation Clause – if the error did not result in "a manifest miscarriage of justice," then it can be deemed harmless. *Conners*, 92 So. 3d at 684-85 (¶¶ 20-21) (concluding that Conners's right to confrontation was violated, but it did not result in a manifest miscarriage of justice, and the error was harmless).

¶7.     Under both the United States Constitution and the Mississippi Constitution, an accused has a right to confront and cross-examine the witnesses against him. U.S. Const. amend VI; Miss. Const. art. 3 § 26 (1890). In *Crawford v. Washington*, 541 U.S. 36 (2004), the United States Supreme Court held that the Confrontation Clause bars the admission of testimonial hearsay unless the witness is unavailable and the defendant had a prior opportunity for cross-examination. *Id.* at 68. Generally, testimony is a "solemn declaration or affirmation made for the purpose of establishing or proving some fact." *Id.* (citation omitted). Laboratory reports created to serve as evidence against the accused at trial are testimonial statements covered by the Confrontation Clause. *See Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 310 (2009); *Bullcoming v. New Mexico*, 131 S. Ct. 2705, 2717 (2011); *Conners*, 92 So. 3d at 684 (¶ 19).

¶8.     In *Melendez-Diaz*, the Supreme Court held that sworn certificates of analysis – stating that the substance taken from the defendant had been tested and found to be cocaine – were testimonial, therefore, the certificates were inadmissible unless the analysts who prepared them were unavailable and there had been a prior opportunity to cross-examine

4

them. *Melendez-Diaz*, 557 U. S. at 311. In *Bullcoming*, the State introduced a forensic laboratory report, which certified Bullcoming's blood alcohol level, through an analyst who was familiar with the lab's procedures but had not participated in or observed the testing of Bullcoming's blood. *Bullcoming*, 131 S. Ct. at 2712. The Supreme Court held that the State's use of a surrogate analyst "who did not sign the certification or perform or observe the test" fell short of satisfying Bullcoming's right of confrontation. *Id.* at 2710.

¶9.     Applying the rules from *Melendez-Diaz* and *Bullcoming*, we have held that a defendant's right of confrontation is satisfied by the testimony of an analyst who reviewed the report for accuracy and signed it as a technical reviewer. *Grim v. State*, 102 So. 3d 1073, 1081 (Miss. 2012); *Jenkins v. State*, 102 So. 3d 1063, 1069 (Miss. 2012). The Court wrote the following about the testifying analyst in *Grim*:

> [The analyst] was able to explain competently the types of tests that were performed and the analysis that was conducted. He had performed "procedural checks" by reviewing all of the data submitted to ensure that the data supported the conclusions contained in the report. Based on the data reviewed, [he] had reached his own conclusion that the substance tested was cocaine. His conclusion was consistent with the report, and he had signed the report as the technical reviewer. [He] satisfied the *McGowan* test because he had "intimate knowledge" of the underlying analysis and the report prepared by the primary analyst.

*Grim*, 102 So. 3d at 1081 (¶ 20) (citing *McGowan v. State*, 859 So. 2d 320 (Miss. 2003)). The instant case is similar to both *Grim* and *Jenkins*, in which the Court held that "a supervisor, reviewer, or other analyst involved may testify in place of the primary analyst where that person was actively involved in the production of the report and had intimate knowledge of analyses even though he or she did not perform the tests first hand." *Grim*, 102 So. 3d at 1081 (¶ 22); *Jenkins*, 102 So. 3d at 1069 (¶ 19) (internal citations omitted). In each

5

case, the Court held that the defendant "had the opportunity to confront and cross-examine [the analyst] at trial, which satisfied his Sixth Amendment right to confront the witness against him."  *Grim*, 102 So. 3d at 1081 (¶ 22); *Jenkins*, 102 So. 3d at 1069 (¶ 19).[2]

¶10.    In *Conners v. State*, former Presiding Justice Carlson wrote a specially concurring opinion to expound on the admissibility of forensic laboratory reports that are testimonial in nature.  Because "laboratory work and testing often involve multiple analysts," there are instances in which "someone other than the primary analyst who conducted the test can testify regarding the results."  *Conners*, 92 So. 3d at 689-90 (¶ 39) (Carlson, P.J., specially concurring).

> The central inquiry for whether a witness can satisfy a defendant's right to confrontation is twofold. First, we ask whether the witness has "intimate knowledge" of the particular report, even if the witness was not the primary analyst or did not perform the analysis firsthand. [*McGowen*, 859 So. 2d at 340.] Second, we ask whether the witness was "actively involved in the production" of the report at issue. *Id.* We require a witness to be knowledgeable about both the underlying analysis and the report itself to satisfy the protections of the Confrontation Clause. *If an analyst can discuss competently the analysis performed, as well as the particular document being offered – in other words, the analyst can testify live regarding the testing, methodology, and results of the analysis, rather than simply relying on the document to speak for itself – a defendant is adequately protected by the Confrontation Clause. . . .*

*Id.* at 690 (¶ 41) (Carlson, P.J., specially concurring, joined by Waller, C.J., Dickinson, P.J., Randolph, Lamar, Kitchens, Chandler, and Pierce, J.J.) (emphasis added, footnote omitted).

---

[2] The dissenting justices would overrule *Grim* and *Jenkins*, saying they relied on pre-*Bullcoming* precedent.  (Dis. Op. ¶¶27, 29.)  Be that as it may, that does not render *Grim* and *Jenkins* defective.  In both cases, the Court recognized *Bullcoming* and *Melendez-Diaz* and addressed that line of cases in depth.  *See Jenkins*, 102 So. 3d at 1066-69 (¶¶ 9-19); *Grim*, 102 So. 3d at 1078-81 (¶¶ 12-22).

In **Conners**, two forensic reports that were testimonial in nature had been admitted at trial through a detective who "had no involvement whatsoever in the tests or the generation of the reports as a result of the tests." **Id.** at 691 (¶ 44). Certainly, it was error for the reports to be admitted through the detective, but the Court still held that the error was harmless. **Id.**

¶11. In the instant case, the report itself was not admitted into evidence, but Fernandez testified about the results of the tests.[3] Fernandez provided meaningful testimony and adequately responded to all questions asked on direct and cross-examination. Fernandez was well versed in the general process for substance testing as well as the specific testing of the substance at issue. He explained that every test performed at the Mississippi Crime Laboratory must be reviewed by a second analyst of equal accreditation before the test is

---

[3] In a separate opinion in **Bullcoming**, Justice Sotomayor wrote about several circumstances to which **Bullcoming** did *not* apply, including instances "in which an expert witness was asked for his independent opinion about underlying testimonial reports that were not themselves admitted into evidence." **Bullcoming**, 131 S. Ct. at 2722 (Sotomayor, J., concurring in part) (citing Fed. R. Evid. 703)). The Court had the opportunity to address that issue soon thereafter in **Williams v. Illinois**, 132 S. Ct. 2221 (2012).

> We now conclude that this form of expert testimony does not violate the Confrontation Clause because that provision has no application to out-of-court statements that are not offered to prove the truth of the matter asserted. When an expert testifies for the prosecution in a criminal case, the defendant has the opportunity to cross-examine the expert about any statements that are offered for their truth. Out-of-court statements that are related by the expert solely for the purpose of explaining the assumptions on which that opinion rests are not offered for their truth and thus fall outside the scope of the Confrontation Clause. Applying this rule to the present case, we conclude that the expert's testimony did not violate the Sixth Amendment.

**Williams**, 132 S. Ct. at 2228. In the instant case, Fernandez was admitted as an expert to testify about the report, and the report was not admitted as evidence at trial. However, the instant case is distinguishable from **Williams** because, in addition to being an expert in the field, Fernandez also had first-hand knowledge about the specific report being discussed.

7

considered complete. The second analyst, or the "technical and administrative reviewer," reviews the report "line by line to make sure everything is correct" and ensures that the "results are commensurate with the information provided by his instrumentation and his other tests." The reviewing analyst reaches a conclusion based on his review of the report, and he signs the report if he is confident that it is correct.

¶12. Regarding the specific test at issue, Reed performed the original test on the substance, and Fernandez acted as the "technical and administrative review." Fernandez explained that Reed "took one half of two tablets from this particular submission and then he extracted from them the suspected components of it, and he ran it on an instrument called the GC mass spec to determine exactly what was in [it]." Fernandez testified that Reed's test of the pills had revealed them to contain morphine. He testified that, as the technical reviewer, he went over Reed's report in detail to ensure that it was correct, and he reached an independent conclusion that the pills contained morphine based his review of Reed's work. Fernandez signed the report after reviewing it and reaching his own conclusion that the report was correct and that the substance was morphine.

¶13. Fernandez's testimony about the report was admissible because Fernandez had intimate knowledge of the testing and he was actively involved in the production of the report because he served as the reviewing analyst. His signature as the reviewing analyst was required for the report to be completed. Fernandez competently discussed the testing performed, the results of the analysis, and his role as the reviewing analyst. A review of the record of Fernandez's testimony confirms that he answered every question posed to him on cross-examination by defense counsel and never averred that his role rendered him without

8

the requisite knowledge to respond. The admission of Fernandez's testimony was not error and did not result in prejudice to Hingle. Accordingly, his testimony did not result in a "manifest miscarriage of justice." *Burdette v. State*, 110 So. 3d 296, 305 (¶ 26) (Miss. 2013) (Where constitutional errors "did not prejudice the outcome of the trial, there was no manifest miscarriage of justice and no reversible error."). Reversal under the plain error doctrine is not warranted.

**II. The trial court did not err in admitting the pills into evidence.**

¶14. The pills were admitted into evidence during Fernandez's testimony. Hingle objected, arguing that the State had failed to lay a foundation for the admission of the pills because the chain of custody had not been established. The trial court overruled the objection and admitted the pills. We review the trial court's admission of evidence for abuse of discretion. *Deeds v. State*, 27 So. 3d 1135, 1141 (¶ 15) (Miss. 2009).

¶15. Under Mississippi Rule of Evidence 901, "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Miss. R. Evid. 901(a). The State need not produce every person who has handled the evidence. *Deeds*, 27 So. 3d at 1142 (¶ 20). "[F]or the defendant to show a break in the chain of custody, there must be an 'indication or reasonable inference of probable tampering with the evidence or substitution of the evidence.'" *Id.* (quoting *Spann v. State*, 771 So. 2d 883, 894 (Miss. 2000)). The defendant cannot meet her burden with a mere suggestion that tampering or substitution possibly has occurred. *Deeds*, 27 So. 3d at 1142.

9

¶16. Hingle complains that the State did not account for what happened to the pills after Hingle gave them to Wheater and that nothing showed that the drugs were handled in a secure, controlled manner. Herring testified that, after Hingle gave the pills to Wheater, Wheater held them until they reached the post-buy location. At the post-buy location, Agent Coleman took the pills from Wheater, put them in a bag, and initialed and sealed the bag. Herring testified that Wheater was searched before and after the transaction. A photocopy of Exhibits 2 and 3, containing the pills, bears a notation stating "Coleman to Evidence 1846." Fernandez testified that the barcode on the evidence bag that contained the pills showed that they were received by the crime lab and resealed after Reed tested them. The above-described facts do not support a reasonable inference of substitution or tampering. The trial court's admission of the pills into evidence was not an abuse of discretion.

**Conclusion**

¶17. The admission of the reviewing analyst's testimony did not violate Hingle's right to confrontation, and Hingle's chain-of-custody claim is without merit. We affirm the judgment of the DeSoto County Circuit Court.

¶18. **CONVICTION OF SALE OF A CONTROLLED SUBSTANCE AND SENTENCE OF SEVEN (7) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. UPON RELEASE, APPELLANT SHALL BE PLACED ON EIGHT (8) YEARS POST-RELEASE SUPERVISION WITH THREE (3) YEARS OF REPORTING AND FIVE (5) YEARS OF NON-REPORTING, WITH CONDITIONS. SENTENCE SHALL RUN CONSECUTIVELY TO ANY AND ALL SENTENCES PREVIOUSLY IMPOSED. APPELLANT SHALL PAY COURT COSTS, A FINE OF $1,000, CRIME VICTIM COMPENSATION FUND FEE OF $100, CRIME LAB FEE OF $707.15 AND RESTITUTION OF $200. APPELLANT IS GIVEN CREDIT FOR ONE (1) DAY SERVED.**

**WALLER, C.J., RANDOLPH, P.J., LAMAR AND PIERCE, JJ., CONCUR. CHANDLER, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY DICKINSON, P.J., KITCHENS AND KING, JJ.**

**CHANDLER, JUSTICE, DISSENTING:**

¶19. For the reasons cogently set forth in the dissents of Presiding Justice Dickinson and Justice Kitchens in *Grim v. State*, 102 So. 3d 1073 (Miss. 2012), and *Jenkins v. State*, 102 So. 3d 1063 (Miss. 2012), I respectfully dissent. I cannot sanction this Court's holding that testimony from a lab supervisor who merely reviewed and signed a lab report, but did not perform, or even observe, the test at issue satisfies the Confrontation Clause. Because Gary Fernandez did not perform or observe the testing in this case, he lacked any knowledge of the particular test and testing process and could not meaningfully respond to cross-examination. I would find that the admission of the test results through Ferndandez's testimony constituted plain error that entitles Hingle to a new trial.

¶20. The United States Supreme Court has held that laboratory reports created to serve as evidence against the accused at trial are within the "core class of testimonial statements" covered by the Confrontation Clause. *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 310, 129 S. Ct. 2527, 2532, 173 L. Ed. 2d 314 (2009). In *Melendez-Diaz*, the prosecution placed into evidence sworn certificates of analysis stating that the substance taken from the defendant had been tested and found to be cocaine. *Id.* at 308, 129 S. Ct. at 2531. The Court held that the certificates were testimonial because they were "functionally identical to live, in-court testimony, doing 'precisely what a witness does on direct examination.'" *Id.* at 310, 129 S. Ct. at 2532 (quoting *Davis v. Washington*, 547 U.S. 813, 830, 126 S. Ct. 2266, 165 L. Ed. 2d 224 (2006)). The Court held that, because the certificates were testimonial, they

11

were inadmissible unless the analysts were unavailable and there had been a prior opportunity to cross-examine them. *Melendez-Diaz*, 557 U.S. at 311, 129 S. Ct. at 2532. Explaining its rationale for requiring live testimony from the analysts, the Court stated:

> Confrontation is one means of assuring accurate forensic analysis. While it is true . . . that an honest analyst will not alter his testimony when forced to confront the defendant, . . . the same cannot be said of the fraudulent analyst. . . . Like the eyewitness who has fabricated his account to the police, the analyst who provides false results may, under oath in open court, reconsider his false testimony.
>
> . . .
> Confrontation is designed to weed out not only the fraudulent analyst, but the incompetent one as well. Serious deficiencies have been found in the forensic evidence used in criminal trials.
>
> . . .
> [T]here is little reason to believe that confrontation will be useless in testing analysts' honesty, proficiency, and methodology – the features that are commonly the focus in the cross-examination of experts.

*Id.* at 318-20, 129 S. Ct. at 2537-38.

¶21.    In *Bullcoming v. New Mexico*, 131 S. Ct. 2705, 2710, 180 L. Ed. 2d 610 (2011), the Supreme Court found that the Confrontation Clause prevents the state from introducing a forensic laboratory report through the testimony of an analyst "who did not sign the certification or perform or observe the test reported in the certification." In Bullcoming's drunk-driving prosecution, the State did not produce the analyst who had signed the lab report certifying that Bullcoming's blood alcohol level was above the threshold for aggravated driving while intoxicated. *Id.* at 2709. Rather, the State presented another analyst who was familiar with the lab's procedures but had not participated in or observed the test of Bullcoming's blood. *Id.* The Supreme Court held that the State's use of a surrogate analyst

who had not signed the certification or performed or observed the test fell short of satisfying Bullcoming's right of confrontation; the surrogate analyst "could not convey what [the tester] knew or observed about the events his certification concerned, i.e., the particular test and testing process he employed. Nor could such surrogate testimony expose any lapses or lies on the certifying analyst's part." *Id.* at 2710, 2715.

¶22.    The Supreme Court faced a variation on this theme in ***Williams v. Illinois***, 132 S. Ct. 2221, 183 L. Ed. 2d 89 (2012). In ***Williams***, an expert testified that a DNA profile developed by an outside lab from a rape victim's vaginal swabs matched a DNA profile of the defendant developed by the state crime lab. *Id.* at 2227. The State did not introduce live testimony from an analyst from the outside lab. *Id.* A plurality of the Court held that the admission of the outside lab's DNA profile did not violate the Confrontation Clause because it had not been offered to prove the truth of the matter asserted. *Id.* at 2236. Rather, the  testimony about the outside lab's DNA profile was admitted to explain the basis for the expert's opinion that the two profiles matched. *Id.* at 2239; *see* M.R.E. 703 ("the facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing"). The plurality held that, because the outside lab's DNA profile was not offered for its truth, but instead to show the underlying facts and data the expert used to reach her opinion, the Confrontation Clause did not apply. *Id.* at 2240. The plurality also found that the outside lab's report was not testimonial because it was not created for the primary purpose of accusing "a targeted individual."  *Id.* at 2243.

¶23.    In this case, Fernandez testified that Reed's test of the pills had revealed them to contain morphine. He testified that he went over Reed's report "line by line" to make sure

13

everything was correct, that is, that the report was "what it says it is," and that the results were commensurate with the testing methods. Fernandez testified that he reached his own conclusion that the pills contained morphine based his own independent review of Reed's work. Reed's report was not admitted into evidence. Nonetheless, because the sole purpose of Fernandez's testimony was to relay the contents of that report to the jury, Fernandez was a "mere conduit[] for hearsay." *Id.* at 2241. Unlike in *Williams*, Fernandez did not rely on the report to reach his own independent, expert opinion, because his opinion was entirely based on the results of another analyst's test.

¶24. The facts of today's case are virtually indistinguishable from those in *Bullcoming*. As in *Bullcoming*, the State presented the testimony of an analyst who was familiar with the lab's procedures but had neither participated in nor observed the test at issue. Relying on *Grim v. State*, 102 So. 3d 1073 (Miss. 2012), and *Jenkins v. State*, 102 So. 3d 1063 (Miss. 2012), the majority finds that this case is distinguishable from *Bullcoming* because, here, the testifying analyst peer-reviewed the report and signed it. In *Grim* and *Jenkins*, the testifying analyst's involvement was limited to having reviewed and signed a report of testing performed by another analyst. *Grim*, 102 So. 3d at 1077; *Jenkins*, 102 So. 3d at 1065. The testifying analysts had neither observed the tests nor performed any part of the tests. *Grim*, 102 So. 3d at 1077; *Jenkins*, 102 So. 3d at 1065. Relying heavily on pre-*Crawford* precedent, this Court held that "when the testifying witness is a court-accepted expert in the relevant field who participated in the analysis in some capacity, such as by performing procedural checks, then the testifying witness's testimony does not violate a defendant's Sixth Amendment rights." *Grim*, 102 So. 3d at 1079 (quoting *McGowan v. State*, 859 So.

14

2d 320, 339 (Miss. 2003)); *Jenkins*, 102 So. 3d at 1067-68 (quoting *McGowan*, 859 So. 2d at 339). The Court held that "a supervisor, reviewer, or other analyst involved may testify in place of the primary analyst where that person was 'actively involved in the production of the report and had intimate knowledge of [the] analyses even though [he or] she did not perform the tests first hand.'" *Grim*, 102 So. 3d at 1081 (quoting *McGowan*, 859 So. 2d at 340); *Jenkins*, 102 So. 3d at 1069 (quoting *McGowan*, 859 So. 2d at 340).

¶25. Applying these rules, the Court in *Jenkins* and *Grim* held that the individual defendant's right of confrontation was satisfied by the testimony of an analyst who had reviewed the report for accuracy and signed it as a technical reviewer. *Grim*, 102 So. 3d at 1081, *Jenkins*, 102 So. 3d at 1069. In *Grim*, the analyst

> was able to explain competently the types of tests that were performed and the analysis that was conducted. He had performed "procedural checks" by reviewing all of the data submitted to ensure that the data supported the conclusions contained in the report. Based on the data reviewed, [he] had reached his own conclusion that the substance tested was cocaine. His conclusion was consistent with the report, and he had signed the report as the technical reviewer. [He] satisfied the *McGowan* test because he had "intimate knowledge" of the underlying analysis and the report prepared by the primary analyst.

*Grim*, 102 So. 3d at 1081.

¶26. Three justices dissented in *Grim* and four in *Jenkins*. *Grim*, 102 So. 3d at 1082 (Kitchens, J., dissenting, joined by Dickinson, P.J., and Chandler, J.; King, J., not participating) (Dickinson, P.J., dissenting to the denial of rehearing, joined by Kitchens and Chandler, JJ.); *Jenkins*, 102 So. 3d at 1070 (Kitchens, J., dissenting, joined by Dickinson, P.J., Chandler, J. and King, JJ.). The dissents would have held that a lab supervisor who reviewed and signed the report but did not perform or observe the test is a surrogate witness

15

for the analyst who actually performed the test. *Grim*, 102 So. 3d at 1070; *Jenkins*, 102 So. 3d at 1083. The dissents opined that presenting the test results through technical reviewers who neither observed nor performed the tests violated the defendants' right to confrontation. *Grim*, 102 So. 3d at 1070; *Jenkins*, 102 So. 3d at 1083. This is because such a witness lacks firsthand knowledge of the specific test at issue, depriving the defendant of the caliber of cross-examination demanded by the Sixth Amendment. *Jenkins*, 102 So. 3d at 1083.

¶27. Problematically, the majority relies upon *McGowan*, which is pre-*Crawford*, pre-*Bullcoming* precedent, to conclude that testimony from an analyst who has performed procedural checks, but has not performed or observed the test at issue, satisfies the Confrontation Clause. I would find that this Court's approval of testimony by a supervisor who merely reviewed and signed off on the report of another's test results does not comport with what is required by *Bullcoming*. In *Bullcoming*, the Supreme Court held that testimony by an analyst "who did not sign the certification or perform or observe the test reported in the certification" did not satisfy the defendant's confrontation rights. *Bullcoming*, 131 U.S. at 2710. The Court held that such "surrogate testimony" could not convey what the testing analyst knew or observed about the particular test and testing process. *Id.* at 2715. The use of surrogate testimony could not "expose any lapses or lies on the certifying analyst's part." *Id.* Although *Bullcoming* stated that an analyst who "sign[ed] the certification" could testify, it emphasized that the testifying analyst must have knowledge of the events of the particular test, such as whether the sample received was intact with the seal unbroken, and whether the tester precisely adhered to the proper protocol in conducing the test, because these issues are "meet for cross-examination." *Id.* at 2714. Plainly, *Bullcoming* contemplates that an analyst

16

who signed the report must have knowledge of the events of the particular test in order to satisfy the Confrontation Clause. Merely reviewing and signing off on another analyst's test report is not enough to satisfy the requisites outlined in *Bullcoming* – that the testifying analyst have personal knowledge of the particular test and testing process employed so that any deviations from protocol or lapses or lies on the testing analyst's part can be identified. *Id.* at 2715, 2716 n.8.

¶28. Fernandez, who merely reviewed a report of a test generated by Reed, lacked personal knowledge of the events of the specific test. Certainly, Fernandez reviewed the test results, was familiar with the testing process, and was equipped to testify on whether the written report showed that the test comported with proper procedures and whether the results of the test were commensurate with the testing devices used. He testified in terms of what Reed "would" have done to conduct the test, and that it appeared from the report that Reed's result was correct. But he could not testify as to whether Reed had received the sample intact, whether Reed had dropped or mishandled the sample, or whether Reed had encountered any problems with the testing equipment. Additionally, Fernandez's surrogate testimony could not "expose any lapses or lies on [Reed's] part." *Id.* at 2715. Fernandez's testimony did not afford Hingle the opportunity to cross-examine the analyst who had performed or observed the test on what that analyst "knew or observed about the events his certification concerned, i.e., the particular test and testing process he employed," as required by *Bullcoming*. *Id.* I observe that the State could have satisfied the Confrontation Clause here by simply having had Fernandez retest the pills and testify about the results of the retest. *Id.* at 2718.

¶29.    Because *Grim* and *Jenkins* are inconsistent with the strictures of *Bullcoming*, I would overrule those cases. I would hold that, although Fernandez reviewed and signed the test report, because he did not perform or observe the testing of the pills, his surrogate testimony did not satisfy Hingle's confrontation rights under the Sixth Amendment. Without evidence establishing that the pills contained morphine, the State would not have been able to prove the elements of sale of morphine. Therefore, permitting Fernandez to testify as a surrogate for Reed, in violation of the Confrontation Clause, constituted a manifest injustice amounting to plain error. "[T]he [Confrontation] Clause does not tolerate dispensing with confrontation simply because the court believes that questioning one witness about another's testimonial statements provides a fair enough opportunity for cross-examination." *Id.* at 2716. I would reverse and remand for a new trial.

**DICKINSON, P.J., KITCHENS AND KING, JJ., JOIN THIS OPINION.**